STONE-WEBSTER ENGINEERING CORPORATION v. COLLINS.

(Circuit Court of Appeals, Ninth Circuit.    October 7, 1912.)

No. 2,059.

1. MASTER AND SERVANT (§ 170*)—INJURIES TO SERVANT—COMPETENT FELLOW SERVANTS—DUTY TO EMPLOY.

A master's duty to employ reasonably prudent and competent fellow servants is discharged when the master has exercised ordinary care, prudence, and circumspection to that end, such as a person of ordinary judgment and discernment, inured to that kind of business, would ordi-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

narily exercise, having in mind the safety and security of the coemployés from harm and accident while engaged in their work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 336; Dec. Dig. § 170.*]

2. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—SELECTION OF FELLOW SERVANTS.

In an action for injuries to a servant by the negligence of a coemployé, whether defendant was negligent in selecting the latter *held* for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

3. MASTER AND SERVANT (§ 88*)—INJURIES TO SERVANT—TERMINATION OF EMPLOYMENT—RETURNING FROM WORK.

Where an employé was permitted to ride on defendant's engine from the place of his work to camp after the termination of the work for the day, and was injured while so doing, the master was not freed from liability because the servant at the time of his injury was not acting within the scope of his employment, because the relation of master and servant had temporarily ceased to exist; defendant being still under obligation to observe reasonable care for plaintiff's protection while on his way to camp.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 144–151; Dec. Dig. § 88.*

Injuries to servant while not on duty, see note to Ellsworth v. Metheney, 44 C. C. A. 489.]

4. MASTER AND SERVANT (§§ 288, 289*)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE—ASSUMED RISK.

In an action for injuries to a servant while riding on defendant's engine from his place of employment to camp, whether plaintiff was negligent, and whether he assumed the risk of injury, *held* for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088, 1089, 1090, 1092–1132; Dec. Dig. §§ 288, 289.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

In Error to the Circuit Court of the United States for the Western Division of the Western District of Washington.

Action by Edward Collins against the Stone-Webster Engineering Corporation. Judgment for plaintiff, and defendant brings error. Affirmed.

F. S. Blattner, Frank C. Neal, and Robert M. Davis, all of Tacoma, Wash., for plaintiff in error.

Govnor Teats, Hugo Metzler, and Leo Teats, all of Tacoma, Wash., for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge. This is an action by Edward Collins, being the plaintiff below, against the plaintiff in error, to recover damages on account of certain personal injuries sustained while in the employ of the plaintiff in error, hereinafter to be called defendant. The defendant was constructing a power plant near Buckley, in Washington. It was engaged, at the time of the accident complained of, in excavating and removing earth; and, as a

convenience for dumping or depositing the same, it constructed trestle work, and on top of that a railroad track, by drift-bolting joists on the piling, then laying ties on these, and upon the ties the iron rails for the track of the engine and cars. The manner of proceeding with the work was to build a section of trestle, equip it with joists, ties, and rails, and then haul and dump or deposit dirt and earth about it through means of engines and dump cars until the space underneath was filled to the track. When this was done, the track was laid out onto the fill, and another section of trestle and track constructed, using the joists taken from the section where the fill had been completed. Thus the fill and track were extended, as the company proceeded with its excavation and deposit of earth. Engines of a type called "dinkey engines" were used for hauling the dump cars, usually four or five being carried in a train. These are equipped with a footboard at the front end for use by the brakemen in switching the engine and cars from one track to another.

The workmen were provided with board and lodging at camp designated "Camp 8—A." At the time, the defendant was using a steam shovel for excavating. The dump cars were filled by means of the steam shovel, and then the dirt was hauled to the end of the track and deposited. The plaintiff was employed in the capacity of a carpenter's helper, and immediately before the accident was at work in constructing trestle for extending the dump. His foreman of construction and other men were at work with him. In going to camp the men proceeded along the railroad track from the dump to a switch, a distance of 300 feet, more or less, thence along the main track, from 300 to 400 feet, to near where the steam shovel was located, then on beyond some 600 feet to camp. The railroad track at the dump and approaching it was constructed at a grade of about 3 per cent., so that the cars were pushed upgrade as the earth was brought to the dump.

At 6 o'clock on the evening of the 7th of August, 1910, the engineer had pushed four cars out upon the trestle, which, being unloaded, were drawn back again upon the solid track near the switch. The purpose was to leave the cars on the track for the night, as was usual, and cut the engine loose and run it down to a place near the steam shovel, to be left there under the care of a watchman. The cars left on the track were secured by placing blocks of wood on the rails in front of the wheels, and when secured the engine was uncoupled from them. Just after the engine had been uncoupled, and before it was put under way for moving down the track, the plaintiff attempted to get upon the footboard in front of the engine for the purpose of riding down to the steam shovel, on his way to camp, and in doing so his right leg and foot were caught by the cars bumping against the engine, by reason whereof he received the injuries complained of.

The cause of complaint is that the defendant was negligent in employing and having in its employ, and assigned to the duty of brakeman on the train, including the engine and cars then in use,

a young boy, who was inexperienced, and physically and mentally incompetent to attend to the work of switching and managing the cars, and properly blocking them when left upon the track unattended with the engine. The boy's name was Lester Hayden, and at the time of the accident he was in his eighteenth year. And it is further alleged that he, through want of proper attention, so carelessly and negligently blocked the cars upon the track that they were not made secure and safe, and that after the engine had been uncoupled and run ahead a few feet they ran down and collided with the engine, causing the injury to plaintiff's leg and foot.

The plaintiff's account of the accident in brief is that he, with Charles Comstock, his foreman, and some six or eight other men were at work on the trestle; that the men were all released, except himself and another employé, before the hour to quit, so that they might go to camp on the company's time, they having to carry some tools. The cars were pushed out on the trestle and unloaded, and then run down to the place where they were stopped. It then being 5 o'clock, the hour of quitting work, Comstock, the plaintiff, and the other employé, being desirous of riding in on the engine, hurried forward. The plaintiff, carrying a spike maul and an auger, passed the cars on the right-hand side and came up to the engine. The cars were stationary when they passed them, and the engine had been cut loose and was standing from 10 to 18 feet in advance of them. Comstock was ahead, and had stepped upon the footboard, and was sitting on the corner of the engine. The plaintiff stepped in front of Comstock on the board. The other man then came up and asked for room, whereupon plaintiff attempted to pass to the other end of the footboard, to the other side of the engine. In doing so he first laid his spike maul and auger over on that end of the board, and stepped over the bumper with his left foot, holding onto the hand rail and facing the engine. In the meanwhile, and while carrying his right foot and leg around the bumper and in front of it, the cars came down and collided with his leg. The engine was then stationary, and he was not aware that the cars were moving down upon it while he was getting upon the footboard.

Comstock's testimony does not materially differ from the plaintiff's, except that he thinks the engine was standing some 6 or 8 feet from the cars at the time they boarded the engine, and he saw Hayden put a block under the wheel of the car. Harrington, another witness, relates that he passed down ahead of the plaintiff; that when he passed Comstock he was sitting on the engine, and the engine was attached to the cars.

On the other hand, the testimony of Hayden and the engineer would seem to indicate that, when the plaintiff boarded the engine, the engine was backing up at the signal of Hayden; that it was the custom in blocking the cars to cut the engine loose, running it ahead slowly for a short distance, and stopping, to test whether the cars were securely blocked before going on finally; that on this occasion the cars had been blocked, and the engine

had been cut loose and run ahead a few feet at the signal of Hayden, the brakeman; that Hayden, finding the cars had not been securely blocked, had signaled the engineer to back up, and the engine was moving back towards the cars again at the time of the collision. It must be understood that the engine was fronting the cars, but pushing them ahead of it, and was running backwards in going towards the steam shovel. When we speak of backing up to meet the cars, the engine was itself running forward.

There was also testimony tending to show that Hayden had had only slight experience as a brakeman, that he had been at work but a week in that kind of service, and that he was rather careless in the way he handled his cars, was inattentive to his work, and did not seem to realize what should be done at all times, and that his inexperience and inattention to his work had become a topic of remark among the men. There being a dispute as to the manner in which the accident happened, the question touching it was solely for the jury's determination; that is to say, was it because of the carelessness, want of experience, and want of attention of Hayden? The jury must have found that it was, for they could not have found for the plaintiff otherwise.

[1] In this connection, there was also another question of vital consequence, which was whether the defendant company had used ordinary care in the selection of its servants, for it was charged with the duty to its servants to employ reasonably prudent and competent fellow servants to work with them. This duty is discharged, however, when the master has exercised ordinary care, prudence, and circumspection, such as a person of ordinary judgment and discernment, inured to that kind of business, would ordinarily exercise, having in mind the safety and security of his employés from harm and accident while engaged in their work. The like duty applies as respects keeping an incompetent servant in the master's employ after he has discovered, or might have discovered by reasonable care and prudence, such incompetence. 26 Cyc. 1293–1299.

[2] On the subject of the selection of brakemen for the service, Mr. F. N. Thebo, the superintendent of construction, testified that prior to and about the time of the accident he was experiencing difficulty in keeping a full crew of workmen, and, being asked if it was customary in the employment of brakemen to make inquiries of the applicants as to their experience, he answered:

"Yes, sir, it is at certain times, when men are plentiful, to get experienced men; but when men are not plentiful there are times when we have to depend upon the men themselves and their judgment as to whether they can do the work or not."

There is here some evidence that the usual care and precaution in the selection of brakemen was not exercised, and, taken in connection with the evidence as to Hayden's inexperience and inattention to his work, the question was properly left to the jury for their consideration; no exceptions being urged to the instructions of the court submitting it.

[3] Another question presented is whether the plaintiff at the time of the accident was acting within the scope of his employment, so as to render the defendant liable for his injury. It is urged that the relation of master and servant had ceased to exist, plaintiff having quit work for the night, and that the risk of injury attending his further movements was his own, and not that of the company. Perhaps ordinarily such would be the case. There is evidence here, however, tending to show that the men were permitted to ride in on the engine and cars from their work in going to their camp. The plaintiff testified that, being the carpenter's helper, he was sent on errands from time to time to get tools and materials, and that he was always permitted to ride on the cars or the engine in order to expedite his work, and that on occasions before this he had ridden in after work on the engine. There is other testimony in corroboration, besides evidence tending to show that the men were not forbidden to ride on the engine. If at this juncture the relation of master and servant had ceased to exist, though there is authority to the contrary (Helmke v. Thilmany, 107 Wis. 216, 83 N. W. 360, 362), the defendant was still under obligation to observe reasonable care for the protection of the plaintiff while on his way to camp.

[4] It is next insisted that plaintiff was guilty of contributory negligence, citing the cases Baltimore & P. R. R. Co. v. Jones, 95 U. S. 439, 24 L. Ed. 506, and Kresanowski v. N. P. Ry. Co. (C. C.) 18 Fed. 229, as conclusive authority for the position. These cases, while somewhat analogous to the one at bar, are yet clearly distinguishable. In the first case, the party injured rode on the pilot of the engine, when a car was specially provided for his transportation. In the other case, the party injured was sent to his work with others on an engine. He, with one or two others, sat on the front of the engine, with their feet over the pilot; the tender being full of wood. The engine, moving to the front, collided with another engine on the track, causing the injury complained of.

Here, the purpose of the plaintiff was to ride on the front end of the engine, it is true; but the engine was expected to move the other way, it being supposed, according to the theory of the plaintiff, that the cars had been safely blocked and that the engine was ready to move off. Under the testimony, the question of contributory negligence was properly left to the jury. So, also, was the question of assumption of risk. There was matter pertinent for the consideration of the jury in that relation.

Affirmed.