Argued March 1, affirmed April 9, 1918.

## STOOL *v.* SOUTHERN PAC. CO.*

### (172 Pac. 101.)

**Commerce — Federal Employers' Liability Act — "Employed in Interstate Commerce."**

1. A section-man on a railroad engaged in interstate commerce, who was required to begin work at 7 o'clock, and who arrived at his place of work a few minutes before 7 o'clock, and who before that time was struck and killed by a work train, was "employed in interstate commerce" at the time of his death within Employers' Liability Act of April 22, 1908, c. 149, § 1, 35 Stat. 65 (U. S. Comp. Stats. 1916, § 8657).

**Commerce—Federal Employers' Liability Act.**

2. Evidence *held* to show that the section-man, who left the toolhouse where he was to wait for his foreman's orders, and walked up a track in the direction of the place on the road where he had worked the previous day, was engaged in an employment so connected with interstate commerce as to bring his dependents within the Employers'

*On constitutionality, application and effect of Federal Employers' Liability Act, generally, see comprehensive note in 47 L. R. A. (N. S.) 38; L. R. A. 1915C, 47.          REPORTER.

Liability Act, Section 1, if the defendant's trainmen were guilty of negligence.

> [As to employees entitled to protection under the Federal Employers' Liability Act, see note in **Ann. Cas.** 1916E, 472.]

**Negligence—Federal Employers' Liability Act—Comparative Negligence—Proximate Cause.**

3. If the joint negligence of both the deceased section-men and the defendant caused his death, it would be deemed the proximate cause, as under Employers' Liability Act, Section 3 (U. S. Comp.-Stats. 1916, § 8659), his contributory negligence would go only to reduce the *quantum* of damages.

**Master and Servant—Speed of Train—Negligence.**

4. As a general rule, no rate of speed of a train is *per se* negligent, though a high rate of speed may become negligence in the particular circumstances.

**Appeal and Error—Question of Fact—Negligence.**

5. In considering whether the speed of a train which killed a section-man was negligent the Supreme Court on appeal cannot judge as to the weight of the testimony, but is confined to an inquiry as to whether there was any testimony tending to show the alleged negligence.

**Master and Servant—Federal Employers' Liability Act—Negligence—Question for Jury.**

6. In an action under the Federal Employers' Liability Act by the dependents of a section-man killed by the work train of an employer engaged in interstate commerce, *held*, that whether defendant was negligent in respect to the speed of its train and as to the signals given was a question for the jury.

**Master and Servant—Assumption of Risk—Scope.**

7. The general rule is that an employee of a railroad company assumes all the risks ordinarily incident to his employment, including those arising from the ordinary operation of trains.

**Master and Servant—Federal Employers' Liability Act—Assumption of Risk.**

8. Under Employers' Liability Act, Section 1, making the employer liable for the negligent act of an employee which results in injury to a coemployee, a section-man did not assume any risk arising from such negligence, but assumed only such risks as a railroad employee ordinarily assumes where trains are passing and the usual precautions for the safety of persons lawfully upon the tracks are observed.

**Master and Servant—Assumption of Risk—Question for Jury.**

9. In an action under the Federal Employers' Liability Act by the dependents of a section-man killed by defendant's work train, *held* that whether he assumed the risk of the negligent failure of the trainmen to give timely warning when his presence and apparent unconsciousness of danger were perceived was a question for the jury.

**Master and Servant—Place of Accident—Street—Evidence.**

10. The admission of testimony as to the location of a certain street designated on the plat of a town and crossing the railroad

track, not showing that it had been opened for the passage of vehicles, but showing that a part of the public used it for foot and horseback travel, was admissible to show that it was a street *de facto* by having been platted as such and used by the public.

**Master and Servant—Evidence—Admissibility.**

11. In such case proof of proprietorship in the person assuming to dedicate the plat showing the street, or that it had never legally been opened to public travel, was aside from the main issue and irrelevant.

**Master and Servant—Railroads—Speed of Trains—Signals.**

12. A railroad operating its trains in a populous village or near a station where the public or its employees congregate must so regulate their speed and give such signals as experience has shown to be most conducive to the safety of employees, etc., and not inconsistent with the efficient operation of trains.

**Appeal and Error—Harmless Error—Examination of Witness.**

13. In an action under the Federal Employers' Liability Act for the death of a section-man, plaintiff's examination of his witness to show that he had been subpoenaed by defendant and had talked with counsel for defendant, *held* not prejudicial to defendant.

**Death—Evidence—Damage.**

14. The Federal Employers' Liability Act is a dependency statute entitling a plaintiff to recover for such benefits and services as she had been accustomed to receive and would have been likely to receive had her deceased husband remained alive, and hence evidence that plaintiff was physically infirm and as to the habit of her deceased husband in taking care of her, of which valuable services she was deprived by his death, was admissible.

**Master and Servant—Federal Employers' Liability Act—Instruction.**

15. In an action under the Federal Employers' Liability Act for the death of a section-man killed by a work train a few minutes before the time for beginning actual work, the modification of an instruction that plaintiff could not recover without showing that deceased was engaged in interstate commerce and was killed through defendant's negligence, by stating that it was not necessary that he should have been engaged in actual work at the instant he was killed, and that plaintiff must prove that his death was wholly or partly caused by defendant's negligence, was not error.

**Trial—Instruction Ignoring Facts—Federal Employers' Liability Act.**

16. The refusal of an instruction that in determining whether deceased at the time of his death was working for defendant in aid of its interstate commerce it was not sufficient that he generally performed work of that nature, but it must appear that at the particular time of the accident he was engaged in interstate commerce, was too narrow and misleading, in that it ignored the fact that deceased might have been on his way to work.

**Master and Servant—Instruction—"Idling."**

17. The refusal to instruct that at the time of the accident deceased was walking on the track and unnecessarily and unreasonably idling before the time for actual work arrived was proper, where there

was no evidence of "idling"; that term being merely synonymous with "loafing," though, if used to indicate that he was "passing away the time" on the track, it was proper.

### Master and Servant—Death of Section-man—Instruction.

18. The modification of an instruction as to defendant's negligence in respect to the speed of its trains by stating that railroad was expected to run its trains at high speed unless there was some exception or circumstances requiring a reasonably prudent person to run a train at a low speed was not error.

### Trial—Instruction—Requests—Matters Covered—Assumption of Risk.

19. In such action a refusal to instruct on the general rule of assumption of risk and that, if deceased was killed by a train run in the usual and ordinary way, he would have assumed the risk, was objectionable, as making him assume the risk of defendant's habitual negligence, and its refusal was not error, in view of a proper instruction given.

### Master and Servant—Trial—Contributory Negligence—Instruction.

20. In such action the modification of a requested instruction as to contributory negligence correctly stating that as matter of law deceased was guilty of some degree of negligence in walking on the track, not substantially differing from the original request, was not error.

### Master and Servant—Federal Employers' Liability Act—Instruction—Proximate Cause.

21. In such action the modification of a requested instruction by stating that, if such negligence of deceased was the "proximate" cause of the accident, his dependents could not recover, by substituting the word "sole," was not misleading.

### Negligence—Proximate Cause.

22. Strictly speaking, there cannot be two "proximate" causes of an injury, and where two or more circumstances each involving negligence combine to cause an injury, the circumstances together constitute but one proximate cause.

### Trial—Instruction to Disregard Evidence.

23. In an action under the Federal Employers' Liability Act for the death of a section-man killed by a work train on the track, the refusal of instruction to disregard plaintiff's evidence as to custom of defendant to run its work train upon a passing track was not error, where the practice was not in the class of customs required to be "immemorial, reasonable and certain," but was a practice so frequent that it might have caused deceased to neglect precautions for his own safety and have gone to diminish the degree of his contributory negligence.

### Pleading—Variance—Effect—Statute.

24. Where the complaint alleged that deceased was on his way to the station when struck, while the evidence showed that he was on his way to his place of work or waiting for work to begin, the variance, in view of its immateriality and the failure of defendant to allege that he was misled, as required by Section 97, L. O. L., was waived.

88 Or.—23

From Marion: PERCY R. KELLY, Judge.

This is an action brought under the Federal Employers' Liability Act by the plaintiff on behalf of herself as widow and her infant son, to recover damages for the killing of her husband, Oluf Olson Stool, while employed as a section-man for the defendant. The deceased had been in the employ of the defendant most of the time for a year previous to the accident which resulted in his death, with the exception of a lay-off on account of some slight ailment for about three weeks just before the accident. He had returned to work the day before he was killed. He resided about two miles from the depot at Turner, and the hour for beginning work on the section was 7 A. M. In order to be ready for work at the prescribed time it was usual for workmen to assemble at a section or tool house situated on the west side of the railroad track about 800 feet south of the depot at Turner, and there await the coming of the foreman and receive their orders for the day. The situation may be briefly described as follows: Turner is a town of approximately 300 to 350 inhabitants; it is situated on the line of the Southern Pacific railroad about nine miles south of Salem, and is surrounded by a rather populous farming community. The depot is apparently pretty well toward the north end of the town and in front of it and on the west side are two tracks, the one nearest the depot being the main track and the one farther west a passing track. The tracks run parallel for 1,000 feet or more to the south and there is a space of eight feet in the clear between them. Some 500 feet south of the depot is a house track or switch, which runs northeasterly up to the east side of the depot; 927 feet south of the depot is a filled trestle approximately 100 feet long and south

of this is a raised grade for some distance, not disclosed in the testimony. The trestle is within the city limits of Turner, and while there are streets crossing the track at the usual intervals delineated upon the plat of the town, it may be said that there are only two of them actually in use by the public. The principal one of these two is immediately south of the depot and is the one used by teams and for general travel, the main portion of the town being apparently upon the east side of the railroad. South of the depot and immediately north of the trestle is a street frequently used by pedestrians but shown not to be open for the use of vehicles. The evidence introduced by plaintiff tended in a greater or less degree to indicate that upon October 6, 1913, deceased, with others, had been at work along the house track north of the tool-house before mentioned, and that the tools used were stored in the tool-house; whether the men carried their tools to and from the tool-house or whether they were conveyed to and from the place of work upon a hand-car, does not appear, though the testimony indicates that there was a hand-car kept in the tool-house.

On the morning of the seventh day of October, 1913, at a time estimated at from ten minutes to 7 o'clock to about 7 o'clock, deceased appeared at the tool-house, set down his dinner-pail and started to walk slowly along the passing track north in the direction of the depot. At a point less than 100 feet from the switch-stand of the house track, he walked diagonally across from the passing track to the main track and was walking on the main track when the accident occurred. The evidence tended to show that the locomotive which caused the injury had sounded a whistle about a mile south of the station, and had also

sounded a crossing whistle some six or seven hundred feet south of where the deceased was struck. The warning whistle that indicates danger and is different from the station or crossing whistle, was not sounded until the train was within from 100 to 150 feet of deceased. The evidence for the plaintiff tended to show that the train was running at a speed of from 30 to 35 miles an hour, while defendant's witnesses estimated the speed at from 20 to 25 miles. The train was a work train consisting of a locomotive and tender, one box-car and a caboose. There was evidence tending to show that the frequent if not usual custom at this place was for such trains, as this work train arriving at this hour, to run in to the station upon the passing track and wait there for the north bound passenger train, which at that time was due to leave Turner at nine minutes past 7 o'clock A. M. The deceased was about 48 years of age and possessed of all his faculties.

The foregoing is not a full detail of the evidence, which consumes several hundred pages, but is deemed sufficient for the purposes of this case. There was a trial and verdict and judgment for plaintiff, from which defendant appeals.      AFFIRMED.

For appellant there was a brief over the names of *Mr. Roscoe C. Nelson* and *Mr. Ben C. Dey,* with an oral argument by *Mr. Nelson.*

For respondent there was a brief with oral arguments by *Mr. Alfred S. Bennett* and *Mr. Francis V. Galloway.*

McBRIDE, C. J.—Learned counsel for defendant has stated concisely the basic questions which arise in the examination of this case, namely: (1) Was de-

cedent injured while performing duties connected with interstate commerce, and (2) was defendant guilty of negligence in any particular constituting a proximate cause of the injury. A multitude of minor questions relating to the admission of testimony and the giving or refusing of instructions are discussed in the briefs and will be considered in their order, but as those above noted are fundamental and go to the right of plaintiff to recover in any event, they will be first considered.

1. It is conceded that defendant's road is an interstate road and that defendant at the time of the injury was engaged in interstate commerce, and it is also conceded that deceased was at the time of the injury in the employ of the defendant as a section-hand, whose duty it was to render service to defendant in repairing its road. It is agreed that pursuant to such employment deceased was present at the tool-house of defendant a few minutes before 7 o'clock in the morning in order to be ready to resume work at precisely 7 o'clock, which was the hour prescribed by defendant. The tool-house seems to have been the place at which the workmen were accustomed to assemble and in order to be on hand promptly it was natural that a workman residing at some distance, in decedent's case two miles, from the place of assembly should endeavor to be there a little ahead of time so as not to delay the work or lose time. Does the fact that the accident occurred while the deceased was waiting for the moment to come when actual labor was to begin deprive his dependents of the benefits of the Federal Employers' Liability Act? We think not. It was necessary and convenient both for himself and his employer that he should be there in readiness to resume his labor at 7 o'clock, and that the time de-

voted to actual work with the pick and shovel should
not be partly consumed by traveling to the place
where it was to be done.  His employer had a right
to expect as a part of his contract of labor that he.
would be on the ground ready to use the tools neces-
sary for the accomplishment of his work when the
bell tapped seven.  It was a part of his duty in order
that he should render efficient service to be upon the
ground, and the fact that in his zeal to comply with
his duty he was there somewhere from one minute to
ten minutes before the time his physical labors were
to be required, should not be held to deprive his de-
pendents of the benefits of the. Employers' Liability
Act.  We think the case in this respect comes within
the spirit of the rule laid down in the following cases,
although the circumstances of none of them are in all
respects identical with that of the case at bar: *Lam-
phere* v. *Oregon R. & Nav. Co.,* 196 Fed. 336 (47
L. R. A. (N. S.) 1, 116 C. C. A. 156); *Horton* v. *Ore-
gon-Washington R. & Nav. Co.,* 72 Wash. 503 (130
Pac. 897, 47 L. R. A. (N. S.) 8); *St. Louis, San Fran-
cisco & Texas Ry. Co.* v. *Seale,* 229 U. S. 156 (Ann.
Cas. 1914C, 156, 57 L. Ed. 1129, 33 Sup. Ct. Rep. 651);
*Stone-Webster Engineering Corp.* v. *Collins,* 199 Fed.
581 (118 C. C. A. 55); *Baltimore & Ohio R. R. Co.* v.
*Whitacre,* 124 Md. 411 (92 Atl. 1060); *North Carolina
R. Co.* v. *Zachary,* 232 U. S. 248 (Ann. Cas. 1914C,
159, 58 L. Ed. 591, 34 Sup. Ct. Rep. 305, 9 N. C. C. A.
109).  Holding as we do, therefore, that the presence
of the decedent upon the grounds of the defendant
under the circumstances last detailed, did not deprive
his dependents of the benefits of the Liability Act,
we will consider further whether his leaving the im-
mediate vicinity of the tool-house has such an effect.

2. This case was tried two years after the happening of the accident and if any of the fellow-employees of deceased were present near the scene of the accident they were not called; the probabilities are that none were near. The most that can be said in any event is that the place chosen by deceased to wait for his foreman was not the safest and that he might have chosen a safer place. Why he left the tool-house and walked down the track is a matter of speculation. He might have gone upon some personal errand although this seems improbable under the circumstances. He was going in the direction of the place on the road where he had worked the day previous and the most reasonable theory would seem to be that he expected to resume his labor in that vicinity on the morning of the accident, and return at noon to the tool-house where he left his dinner-pail, and that instead of loitering on the track he was actually on his way to where his services were required. The hand-car, which is the usual conveyance for tools from one part of a railroad section to another, was locked up with the other tools in the tool-house, and nothing could be more natural than for deceased to leave his dinner-bucket there and walk down the track so as to resume his labors where he had left off the evening before. The section foreman of defendant, whose memory seemed remarkably retentive on most subjects, testified that he could not remember where his section gang were intending to work that morning, but it is a fair inference and one that the jury had a right to draw from the facts proven that deceased was on his way to the place where the gang had left off the evening before, with the intent to resume his work there when the car had arrived with the tools. We take it, therefore, that there was evidence tending to show

that deceased was engaged in an employment so connected with interstate commerce as to bring his dependents within the scope of the act, and that he was upon defendant's track for the purpose of pursuing that employment and that if there is any testimony tending to show that defendant's servants engaged in the management of the work train, were guilty of the acts of negligence charged in the complaint, the verdict for plaintiff ought to stand unless the proceedings upon the trial were so erroneous in other respects as to justify a reversal.

3. It may be conceded, in fact it may be said to be conclusively proven, that the deceased was negligent in not keeping a better lookout for approaching trains, but if defendant's engineer was also negligent in respect to warning deceased of his danger after his presence on the track had been perceived, so that the joint negligence of both the deceased and defendant brought about an injury which, but for such combined negligence would not have happened, then such combined negligence must be deemed the proximate cause of the injury. And while at common law the contributory negligence of the deceased would have been a complete defense, yet in an action under the Federal Employers' Liability Act such contributory negligence only goes to reduce the quantum of damages: Sec. 3, Fed. Em. Liability Act, 1908.

4–6. We will now consider the question as to the negligence of the defendant. It may be conceded that as a general rule no rate of speed by a train is *per se* negligent: *Russell* v. *Oregon R. & N. Co.*, 54 Or. 128 (102 Pac. 619). But it does not follow that because a high rate of speed is not negligence *per se* that a high rate of speed may not become negligence under particular circumstances. In considering the question

in reference to the present case we are not permitted to judge as to the weight of the testimony, but are confined to an inquiry as to whether there is any testimony tending to show such negligence. Tested by this rule we think the court did not err in submitting the case to the jury. We will enumerate these circumstances. It was in evidence that the work trains were accustomed to run in and stop on the passing track in order to allow the passenger train, which left Turner going north at 7 o'clock to pass, and that this custom was known to deceased. It is also in evidence that the train came into the station at a speed of from 30 to 35 miles an hour; that instead of coming in upon the passing track according to custom and where deceased probably expected it would run, it came in upon the main track; that it sounded no whistle except the usual crossing whistle until it approached within from 100 to 150 feet of deceased, and too late to avert the disaster; that the station whistle and crossing whistle would apply as well to the passing track as to the main track and of themselves were no warning to deceased that there was danger in leaving the passing track, and going upon the main track; that he was seen upon the track apparently oblivious to the approaching train when it was from 500 to 600 feet distant. Some of this testimony was disputed but it was in the case and the jury had a right to believe it. In fact, the only reasonable explanation of the apparent indifference of deceased to the approach of the train is, that relying upon a custom of this character of trains to sidetrack on the passing track he crossed to the main track as a measure of safety, or at least felt assured that the approaching train would run in on the passing track according to custom. Under the circumstances de-

tailed above we think it was for the jury to say
whether it was negligence for the defendant's engi-
neer to fail to sound the warning signal sooner.
Three things concurred to require more than usual
caution from defendant's engineer: (1) The train was
coming into the station where people were likely to
be in the vicinity of the track at an extraordinary
rate of speed for a work train; (2) it was deviating
from the usual custom by coming through on the
main track instead of sidetracking so the passenger
train could pass; (3) deceased was seen for a distance
of from 500 to 600 feet walking along the track in a
place of danger and apparently oblivious to it, not
even turning to look at the approaching train. For
some reason he must have believed himself safe and a
warning whistle blown when he was first seen by the
engineer might have prevented the accident. In ad-
dition to the circumstances above mentioned it may
be added that this work train was not running on
schedule, and without the same reason for a high rate
of speed that obtains with regular passenger trains.
The fact that it was "running wild" and was likely
to be unexpected furnished an additional reason for
observing caution in passing through a populous com-
munity and especially when it was deviating from its
usual custom of running in upon a side track.

7–9. Upon the two basic questions, therefore, which
are involved in this appeal, we are in accord with the
contention of plaintiff and will now proceed to con-
sider the other assignments of error specified in the
very able brief of counsel for defendant. The first
and most plausible of these is that deceased assumed
the risk of an injury of this character by virtue of
his contract of employment. The general rule is that
an employee of a railroad company assumes all the

risks ordinarily incident to his employment, includ-
ing those arising from the ordinary operation of
trains upon the road: 4 Labatt's Master & Servant,
§ 1313, and cases there cited.  As section 1 of the
Employers' Liability Act makes the employer liable
for the negligent act of an employee, which results in
injury to a coemployee, it cannot be contended that
the plaintiff assumed any risk which might arise from
such negligence.  He only assumed such risks as one
ordinarily assumes when contracting to work upon a
railroad track where trains are passing and repass-
ing, and the usual precautions for the safety of per-
sons lawfully upon its track are observed: *Doyle* v.
*Southern Pac. Co.*, 56 Or. 495, 516 (108 Pac. 201);
*Conners* v. *Burlington, C. R. & N. Ry. Co.*, 74 Iowa,
383 (37 N. W. 966).  The unusual speed of the train
considered by itself would probably be among the risks
assumed by deceased.  The change from the custom-
ary track to the main track standing alone might
also be among the contingencies concerning which he
should be held to have assumed the risk, but add to
these the negligent failure to give timely warning
when his presence and apparent unconsciousness of
danger were perceived and we have a case which we
think the court was justified in submitting to a jury.
The failure, therefore, of deceased to leave the track
under the circumstances cannot be defended against
upon the theory that he assumed the risk of a negli-
gent failure to warn, but is referable rather to the
theory that he was guilty of contributory negligence,
which, as before stated, is not a complete defense un-
der the Federal Statute.  This phase of the case may
be dismissed by a quotation from the opinion of Jus-
tice FLY in *International & G. N. R. R. Co.* v. *Arias*,

10 Tex. Civ. App. 190 (30 S. W. 446), wherein it is said:

"There is a reciprocal duty existing between the railroad company and the employee at work on the track, the one being that the railroad company must give signals where the nature of the locality requires, and in case there is danger of injuring the employee, to use diligence to prevent it, and the other being that the employee must keep an outlook and seek safety from any trains that may be passing."

10-12. It is objected that the court erred in allowing testimony as to where a certain street designated on the plat of the town of Turner as "G" Street was located upon the ground. The plaintiff first offered in evidence a plat of the town taken from the records of the county, which was admitted in evidence without objection. Counsel for plaintiff then asked the witness questions and received answers tending to show that the street crossed the railroad track south of the section-house and north of the trestle heretofore referred to; that it had never been opened across the track for the passage of teams or vehicles, but that it had been used for the passage of pedestrians and persons on horseback and for driving cattle. All this was objected to and the objection overruled.

One ground of objection seems to have been that there was no proof of proprietorship in the person who assumed to dedicate the plat, and no evidence that the street had ever been legally open to public travel. It would have been obviously improper for the court to have turned aside from the main issues in the case to engage in an investigation as to the technical legality of the dedication of the street. It was sufficient to show that it was a street *de facto* by having been platted as such and used by the public.

The evidence offered tended to show this. It is true that it did not show that it had been opened for the passage of vehicles, but it did show that a portion of the public used it to the extent of foot and horseback travel.

The further objection was that as this was not an action for injury at a crossing, and that it was not claimed that deceased was killed at the crossing, the evidence was irrelevant. It is not probable that the evidence had any effect on the verdict, but it did tend to some extent to show a disregard and heedlessness of the rights and safety of the public, including plaintiff, if the train was rushed past the station grounds and across two streets in a populous community at a high and unusual rate of speed, and without any signal being given to warn persons about the grounds or who might be using the highways, that they were in possible danger. We do not consider the fact that there was not an ordinance prescribing a particular rate of speed for trains passing through the town, as having the effect of a license to trains to run at any rate of speed that its engineer might choose. Such ordinances are but the expression of the corporate judgment of the maximum speed that may be employed without negligence. Whether a disregard of them constitutes negligence *per se* or is merely *prima facie* evidence of negligence is a question upon which courts differ, but irrespective of any ordinance upon the subject it is no doubt the duty of a railway company operating its trains in a populous village or near a station where the public or its employees are wont to congregate, to so regulate their speed and give such signals as experience has demonstrated to be most likely to conduce to the safety of such persons and

not inconsistent with the efficient operation of its trains.

The third assignment of error relates to the admission of testimony regarding the alleged custom of defendant's work trains to come in upon the passing track, and has already been adverted to.

13. The fourth assignment relates to questions asked by counsel for plaintiff of Harry Barnett, who was put upon the stand by plaintiff and toward the conclusion of his testimony was asked if he had not been subpoenaed by defendant, to which he answered "Yes." He was then asked if he had not talked with counsel for defendant, to which he answered in the affirmative. The questions were probably not necessary under the circumstances, but there was nothing in them or in the answers returned that could have prejudiced defendant's case.

14. Assignment No. 5 predicates error in the ruling of the court allowing plaintiff to testify as to the fact that she was physically infirm and as to the habit of her husband in taking care of her in her debilitated condition, we think the testimony was admissible. The statute under consideration is a dependency statute and the plaintiff is entitled to recover for such benefits and services as she had been accustomed to receive, and would therefore have been likely to receive had her husband remained alive. The evidence elicited the fact that the services rendered by deceased were necessary and valuable, and such as plaintiff will hereafter have either to dispense with or pay for and, in our judgment, they were an element to be considered in determining the amount of her recovery. In *Michigan Cent. R. Co.* v. *Vreeland,* 227 U. S. 59 (Ann. Cas. 1914C, 176, 57 L. Ed. 417, 33 Sup. Ct. Rep. 192), the court, referring to this subject, observes:

"The pecuniary loss is not dependent upon any legal liability of the injured person to the beneficiary's. That is not the sole test. There must, however, appear some reasonable expectation of pecuniary assistance or support of which they have been deprived. Compensation for such loss manifestly does not include damages for grief or wounded feelings. * * A pecuniary loss in damages must be one which can be measured by some standard. * * Nevertheless, the word as judicially adopted is not so narrow as to exclude damage for the loss of services of the husband, wife or child, and when the beneficiary is a child, for the loss of that care, counsel, training and education which it might, under the evidence, have reasonably received from the parent and which can only be supplied by the service of another for compensation. * *

"It is not beyond the bounds of supposition that by the death of the intestate, his widow may have been deprived of some actual customary service from him capable of measurement by some pecuniary standard, and that in some degree that service may include as elements, 'care and advice.' "

The 6th assignment of error appears to have been waived and the 7th relates to the motion for a directed verdict. The subject matter of this assignment has already been covered by what is said in respect to assignments 1, 2 and 3.

15. Assignment No. 8 predicates error upon a modification by the court of the following requested instruction:

"Before plaintiff would be entitled to recover any damages at your hands, she must prove two things:

"First—She must prove that at the time of the accident in which her husband was killed, he was engaged in doing some work for the defendant, which work was in furtherance and aid of interstate commerce.

"Second—She must prove that her husband was killed through negligence on the part of the railroad company."

The court gave this, but added:

"It is not necessary in order to bring the case within the law, that the deceased should have been engaged in active work at the very instant he was killed. If his general employment was interstate commerce, and he had come upon the premises of the defendant necessarily and at a customary and proper time to report for work, his presence there might be an incident to his interstate work, and if he was there under such circumstances for the purpose of taking up his work, he might be within the law, even though it were a few minutes before his active work was to commence.

"Second—She must prove that the death of her husband was wholly or partly caused by negligence on the part of the railroad company."

We see no error in the modification. It is in line with *North Carolina R. Co.* v. *Zachary,* 232 U. S. 248 (Ann. Cas. 1914C, 159, 58 L. Ed. 591, 34 Sup. Ct. Rep. 305, 9 N. C. C. A. 109); *St. Louis, San Francisco & Texas Ry. Co.* v. *Seale,* 229 U. S. 156 (Ann. Cas. 1914C, 156, 57 L. Ed. 1129, 33 Sup. Ct. Rep. 651), and *Louisville & N. R. Co.* v. *Walker,* 162 Ky. 209 (172 S. W. 519).

16. Assignment No. 9 predicates error upon the refusal of the court to give the following instruction:

"In arriving at the question as to whether the deceased at the time of the accident was doing some work for the defendant in furtherance and aid of its interstate commerce, it is not sufficient that the deceased, during his working hours, generally performed work of that nature, but it must appear from a preponderance of the evidence, that at the particular time of the accident he was then engaged in some work for the defendant, which work was assisting the defendant in its interstate commerce business."

We think the requested instruction was too narrow, in that it ignored the condition that defendant might have been on his way to work or was waiting on the grounds of the company for work to begin. In the form requested it had a tendency to mislead the jury.

17. Assignment No. 10 is directed to the refusal of the court to give the following instruction, leaving out the words in italics, which were interpolated by the court:

"If, therefore, you find that at the time of the accident the deceased was not doing any work for the defendant, but was walking along defendant's track for the purpose of performing some errand personal to himself, or for the purpose of *unnecessarily* and *unreasonably* idling away the time until his working hours commenced, then the deceased would not, at the time of the accident, have been engaged in work for the defendant in furtherance of its interstate commerce business, and the plaintiff would *not* be entitled to recover any verdict at your hands in this connection."

The instruction as given was fully as strong as the facts warranted. We have looked in vain for any evidence that the deceased was "idling" away his time. He was either waiting for work to begin or going to where he thought it would begin, as a prompt and industrious workman ought to have done. The term "idling" is so nearly synonymous with "loafing" as to be almost a term of reproach and assumes a condition not disclosed by the testimony. That he chose a dangerous place in which to wait for work to begin, or chose a dangerous route to his work, might and would be negligent acts, but they would not necessarily defeat a recovery, if the element of negligence by the defendant was established. Given the usual

88 Or.—24

meaning of the term used, and it would signify that deceased was a mere loafer upon defendant's grounds. Used to indicate that deceased was "passing away the time" on the track, which was evidently the sense in which the court construed the term "idling," the qualification given was proper.

Assignment No: 11 is practically waived.

18. Assignment No. 12 is predicated upon a modification of an instruction asked by defendant as given below, the words in brackets being the change interpolated by the court:

"In arriving at the question as to whether the defendant was negligent, I instruct you that as a matter of law a railroad company has the right [and is expected] to run its trains at high rates of speed, and unless there are some [exceptional] circumstances which would cause a reasonably prudent person to run a train at a low rate of speed, a railroad company has the right to run its trains at as high a rate of speed as it desires."

The instruction as asked was technically correct, and the modification does not alter it in substance and was less likely to be misleading to a jury. In addition to the language above quoted the court added:

"And the rate of speed is not of itself negligence, but it should regulate the rate of speed with due and reasonable regard to the location and circumstances and to the danger, if any, which may occur to the life and limb of its employees and others who may be necessarily or lawfully along the tracks; and whether the rate of speed was negligence under the circumstances is a question of fact for you."

With this addition the instruction constituted an admirable and temperate statement of the law, which deserves commendation for its clearness.

Assignment No. 13 relates to the refusal of the court to instruct in substance that there was no evidence tending to show a failure to give proper warning. This branch of the case has been discussed and need not be further considered.

19. Assignment No. 14 predicates error upon the failure of the court to give the following requested instruction:

"The law says that when one man goes to work for another he assumes, as part of his contract of employment, all of the risks which are ordinarily incident to the business in which he engages. In other words, a section laborer, upon going to work for a railroad company, assumes all of the risks of being struck by moving trains upon the tracks of the railroad company, run in the usual and ordinary way, this being one of the risks incident to the business in which he engages. If, therefore, you find from the evidence that plaintiff's husband was killed by a train run over the tracks of the railroad company in the usual and ordinary way in which defendant's trains were run, then I instruct you that the accident to plaintiff's husband was a result of one of the risks which he assumed in going to work as a section laborer, and that plaintiff cannot recover in this action."

The instruction in a general way states the law, although the statement that if the deceased was killed by a train run over the track of the railroad company in the usual and ordinary way, which defendant's trains were run, he would be held to have assumed the risk, is subject to the criticism that if defendant habitually neglected to give proper warning signals, or otherwise negligently managed its trains, the deceased would be held by such instruction to have assumed the risk of such habitual negligence, which is not the law except in those instances where the injured party is shown to have had previous knowledge

of such negligent custom. Upon this branch of the case the court gave the following instruction, which fully stated the law:

"The law says that when one man goes to work for another, he assumes the risk of an injury arising from the dangers naturally incident to his employment, and the risk of those extraordinary dangers, if any, which are apparent or which he knows and appreciates, but this does not imply that he also assumes those additional risks, if any, arising by the negligent act, if any, of the master, after he has entered upon the performance of his work and of which he has no knowledge and by reasonable intendment could not be held to have known. * *

"Moreover, if the employee voluntarily continues without complaint or objection, after knowledge or notice of risks arising subsequent to the employment and during the course of the service, by reason of the employer's negligence, or otherwise, under conditions by which the employee is chargeable with an appreciation of the danger and where ordinary prudence would require of him a different course, the employee takes upon himself the responsibility entailed by the risk he continues to incur, that is, he assumes such a risk. If the accident in which the deceased met his death was the result of a risk deemed by the law as stated to be assumed by him, then plaintiff could not recover and your verdict should be for the defendant."

Assignment No. 15 is waived.

20. Assignment No. 16 predicates error by reason of the court having modified a request for an instruction as to the contributory negligence of deceased, the modification being indicated by the words italicized in the following quotation:

"I instruct you as a matter of law that plaintiff's husband was guilty of *some degree* of negligence in walking on and along the railroad track without keeping a vigilant lookout for the approach of trains by

both looking and listening, as it was his duty to do. When a person walks along a railroad track longitudinally he must keep a constant lookout both forward and back, and exercise his faculties of sight and hearing for his protection.''

The instruction as given correctly states the law and does not differ substantially from the original request. The court is not bound to give an instruction in the language of the request, if the substance of the request is embodied in it as given. In a case of this character where a rule obtains approximating comparative negligence, the *degree* of negligence of each party is a factor that suggests itself to the judicial mind and the change made by the presiding judge was natural under the circumstances.

21. The 17th assignment predicates error upon the modification of the following requested instruction:

''If you find that such negligence on the part of the plaintiff's husband was the *proximate* cause of the accident, then plaintiff would not be entitled to recover any damages from defendant.''

For the word ''proximate'' the court substituted ''sole'' in the above. It would have been better to have given the instruction as requested, but the general instruction of the court upon proximate cause was so full and definite, the jury could not have been misled.

22. As to the 18th exception, in which the court used the word ''sole'' proximate cause instead of ''proximate'' cause, the instruction was correct. Strictly speaking, there cannot be two ''proximate'' causes for any injury. Where two or more circumstances, each involving negligence, combine to produce an injury which, but for all of them, would not have occurred, these circumstances taken together are the

cause of the injury and therefore constitute but one proximate cause.

23. Assignment No. 19 predicates error upon the refusal of the court to instruct the jury to disregard the evidence of plaintiff as to the custom or practice of the defendant to run its work train upon the passing track. The refusal was not error as the practice was not in the class of these "customs" which the law requires to be "immemorial, reasonable and certain," but rather to a practice so frequent that it might have so far influenced the mind of deceased as to cause him to neglect precautions for his own safety, which he otherwise would have taken, and thereby in a sense have gone to diminish the degree of his contributory negligence.

24. An objection that may be noted here, is that there is a material variance between the pleadings and the proof in the following particulars: It is said that the complaint alleges deceased was on his way to the depot when he was struck, while the evidence for plaintiff tends to show that deceased was on his way to his place of work or waiting on the tracks for work to begin. The variance was as to a mere matter of detail, and could not have misled the defendant and evidently did not, as no objection was made to the testimony upon this ground. Section 97, L. O. L., expressly requires a party claiming the advantage of a variance, to allege and prove that he has been actually misled thereby to his prejudice. We are of the opinion that a failure to raise the question of variance by timely objection and in the manner indicated in Section 97, constitutes a waiver except in those cases where the evidence offered constitutes an entire departure from the cause of action set forth in the complaint, so that to ignore it would in effect permit the

plaintiff to allege one cause of action and try his case upon another cause not alleged: Section 99, L. O. L. Such is not the case here.

Other objections to instructions of the court are discussed in the brief but all of them are simply elaborations of the theory contended for by plaintiff, namely: that the court did not correctly state and define the term "proximate cause"; that there was no evidence of negligence on the part of defendant; and that there was no evidence of a failure on the part of defendant to give timely warning signals. As to each of these we are of the opinion that there was evidence which justified the instruction, although if this court sat as a trier of the fact it might differ from the jury as to its weight. The appeal has been so fairly and ably presented and the questions raised so close and difficult, it would be a pleasure to consider each in detail, but the length of this opinion—already far beyond the writer's customary limit—precludes further discussion, although each assignment has been carefully considered.

Finding no reversible error the judgment is affirmed.                                    AFFIRMED.

BURNETT, BENSON and HARRIS, JJ., concur.