Argued and submitted January 30,
affirmed March 31, reconsideration denied May 1,
petition for review denied June 18, 1980 (289 Or 275)

## RIVIERA MOTORS, INC.,
*Appellant,*

*v.*

## HIGBEE,
*Respondent.*

### (No. A7709-13605, CA 14036)

609 P2d 369

Carlton W. Hodges, Portland, argued the cause for appellant. With him on the briefs was Bernard, Hurley, Crawford, Hodges & Kneeland, Portland.

Thomas A. Caruso, Portland, argued the cause for respondent. With him on the brief were Douglas S. Green, and Welch, Bruun and Green, Portland.

James A. Redden, Attorney General, Walter L. Barrie, Solicitor General, Salem, and Erik G. Sten, Assistant Attorney General, Consumer Protection Division, Portland, filed a brief amicus curiae on behalf of the Consumer Protection Division of the Department of Justice, State of Oregon.

Before Schwab, Chief Judge, and Thornton and Campbell, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

Plaintiff Riviera Motors, Inc., alleged two causes of action, both of which arose from a dishonored check in the amount of $583.76 which defendant gave to plaintiff to pay for automobile repairs. The check was dishonored because defendant stopped payment on it. Plaintiff's first cause of action was on the check, to recover the amount thereof and attorney fees.[1] Defendant answered with a general denial, and as counterclaims alleged violations of Oregon's Unlawful Trade Practices Act, ORS 646.608(1)(j) and (m),[2] for which he sought to recover $200, punitive damages and attorney fees under ORS 646.638(1) and (3)[3].

---

[1] Plaintiff alleged as a second cause of action that in making and then stopping payment of the check, defendant fraudulently obtained possession of his automobile which plaintiff apparently claimed an entitlement to hold under a possessory lien. This cause of action went to the jury under plaintiff's requested instructions, and no issue concerning it is raised on appeal by either party.

[2] ORS 646.608(1)(j) and (m) provide:

"(1)   A person engages in an unlawful practice when in the course of his business, vocation or occupation he:

" * * * * *

"(j)   Makes false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions;

" * * * * *

"(m)   Performs service on or dismantles any goods or real estate when not authorized by the owner or apparent owner thereof."

[3] ORS 646.638(1) and (3) provide:

"(1)   Any person who suffers any ascertainable loss of money or property, real or personal, as a result of wilful use or employment by another person of a method, act or practice declared unlawful by ORS 646.608, may bring an individual action in an appropriate court to recover actual damages or $200, whichever is greater. The court or the jury, as the case may be, may award punitive damages and the court may provide such equitable relief as it deems necessary or proper.

" * * * * *

"(3)   In any action brought by a person under this section, the court may award, in addition to the relief provided in this section, reasonable attorney fees and costs. If the defendant prevails, the court may award reasonable attorney fees and costs if it finds the action to be frivolous."

[547]

The case was tried to a jury, and judgment was entered on the verdict for plaintiff for $368.56 on his first cause of action, and for defendant on his counterclaim under ORS 646.608(1)(m) for $200 plus punitive damages assessed at $10,000. Pursuant to a pre-trial stipulation that any application for attorney fees and costs could be consolidated in the cost bill and both awarded by the court without a hearing, the trial court also entered judgment for the defendant for $1,121.70 as costs and attorney fees. Plaintiff objected to the award of attorney fees and costs, and the trial court amended the judgment to delete the award for attorney fees and costs. Plaintiff appeals from the judgment entered on its first cause of action and on defendant's counterclaim.[4] We affirm.

---

[4] Defendant filed a notice of cross-appeal, seeking review of the trial court's deletion of attorney fees and costs in the amended judgment. Although the notice of cross-appeal was not timely filed and the cross-appeal was dismissed, ORS 19.026, we hold *infra* that the amended judgment is void, and we are satisfied that defendant is entitled to attorney fees and costs as awarded in the initial judgment.

In *Caveny v. Asheim et al,* 202 Or 195, 210, 274 P2d 281 (1954), the Supreme Court stated the extent of a trial court's authority to amend a judgment that has been appealed:

" * * * this court has not yet recognized a right in the circuit court to change any part of its record after this court has acquired appellate jurisdiction in a given matter, except for the express purpose of making its record speak the truth as to matters and things transpiring prior to the entry of its original judgment or decree * * *."

This court acquired appellate jurisdiction of this case under ORS 19.033(1), "[w]hen the notice of appeal [was] served [on the defendant] and filed [together with proof of service with the trial court clerk] as provided in ORS 19.023 to 19.029 * * *." Plaintiff's notice of appeal from the initial judgment was served and filed on March 28, 1979. The amended judgment was filed on March 30, 1979. Under ORS 3.070:

" * * * If signed other than in open court, all * * * judgments and decrees issued, granted or rendered * * * shall be transmitted by the judge to the clerk of the court within the county where the matters are pending. They shall be filed and entered upon receipt thereof and shall become effective from the date of filing."

The amended judgment could have had no effect until after this court had acquired appellate jurisdiction. It is clear that the amendment was not to correct the court's record to conform to the truth but to amend the judgment beyond the court's right to do so as a matter of law. The amended judgment

Plaintiff's numerous assignments of error raise two questions: whether plaintiff was entitled to a directed verdict for $583.76 in its action on the check, and whether defendant pleaded and proved he had suffered "any ascertainable loss of money or property," ORS 646.638(1), n 3, *supra,* which is required to sustain recovery under the Unlawful Trade Practices Act.

Plaintiff is a retail Volkswagen dealer which sells and services Volkswagen automobiles. In March and April of 1977, Riviera advertised a "VW Engine Overhaul" special at a price of $368.56. In response to the advertised special, defendant took his Volkswagen to Riviera on Tuesday, April 5, and executed a repair order authorizing plaintiff to overhaul the engine as advertised and check the brakes. At that time defendant was told by plaintiff's service advisor that the car would be ready by 5 p.m. on the following Friday, April 8.

On April 8, plaintiff's service advisor placed a telephone call to defendant, and as defendant testified:

"A   * * * I was told my car wouldn't be done that evening; that they were waiting for the heads to come back to the shop and they had ended up having to do some extra work. He started telling me they had to do this and that and my car was now going to be approximately $200 or $300 more. I got mad on the phone. I argued with him. I told him I was getting ripped off and hung up. I told him I'd be in Monday to pick up my car and hung up.

"Q   Did they tell you that the work had already been done?

"A   Yeah, he said they had had to do this and that and it was going to be 200 to $300 more, so I took it as them implying that they'd already did it."

is therefore a nullity, *Caveny v. Asheim, supra.* As plaintiff served and filed notices of appeal from the initial judgment and the amended judgment, which are identical but for the deletion of attorney fees and costs in the latter, we will regard the issues raised by plaintiff as presented by an appeal from the initial judgment.

Following the phone conversation, defendant obtained an interest-bearing loan through his credit union to cover the additional charges.

Defendant was finally able to pick up his car on the evening of April 12. The total charges came to $583.76, which defendant paid by check. Later that evening, however, after talking over the transaction with his wife and some friends, defendant resolved to stop payment on the check and to tender instead a check for $368.56, the amount of the advertised special, together with a letter to plaintiff explaining his action. He did both the following day. Plaintiff refused the tender, and this action ensued.

ORS 73.8020(1)(b) provides:

"(1)  Unless otherwise agreed where an instrument is taken for an underlying obligation:
" * * * * *

"(b)  * * * the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment. If the instrument is dishonored action may be maintained on either the instrument or the obligation * * *."

Plaintiff elected to bring its action on the instrument, the dishonored check in the amount of $583.76. Under ORS 73.3070(1) and (2):

"(1)  Unless specifically denied in the pleadings each signature on an instrument is admitted * * *.
" * * * * *

"(2)  When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense."

Defendant did not deny his signature was on the check, and plaintiff argues that as defendant did not plead any affirmative defense, it was entitled to a directed verdict on its first cause of action upon producing the check.

Defenses available to defendant against plaintiff as the holder of the instrument are set out in ORS

73.3060. Of particular relevance here is ORS 73.3060(2):

> "Unless he has the rights of a holder in due course any person takes the instrument subject to:
> " * * * * *
>
> "(2) All defenses of any party which would be available in an action on a simple contract * * *."

Thus, by bringing its action on the check, plaintiff cannot avoid defenses available to defendant had the action been brought on the contract implied by the check. *See Cauffiel Machinery Co. v. Eastern Steel & Metal Co.,* 59 Ohio App2d 1, 391 NE2d 743, 745 (1978).

It was held in *Hanna v. Hope,* 86 Or 303, 308-09, 168 P 618 (1917), that "[a] party is entitled to the relief arising under the law from the facts alleged and proved by him even though he claims for them a value which they do not possess." A corollary of that principle is that facts alleged as part of a counterclaim may also raise a defense, and that in the absence of a timely objection the allegations comprising a defense need not be stated separately from the counterclaim to be effective as such. *Rogue River Management Co. v. Shaw,* 243 Or 54, 60-61, 411 P2d 440 (1966); *and see Widner Electric v. Lee,* 272 Or 445, 451, 537 P2d 527 (1975). Here, the defendant alleged as a "FURTHER AND SEPARATE ANSWER AND COUNTER-CLAIM" that plaintiff advertised the engine overhaul "special" described earlier; that defendant delivered his automobile to plaintiff to have the engine overhaul performed as advertised; that plaintiff " * * * did extra machine work on the engine without getting prior authorization from [defendant]"; and that plaintiff required defendant to pay for the extra work in order to regain possession of the automobile. Though not a model pleading, the answer's allegations raise the defense that part of defendant's indebtedness alleged on the contract implied by the check is for unauthorized work performed by plaintiff on defendant's automobile, for which defendant has no "underlying obligation" to pay. ORS 73.8020(1). As the Supreme

Court noted in *Richmond v. Fields Chevrolet Co.,* 261 Or 186, 194-95, n 1, 493 P2d 154 (1972):

> " 'In cases where there has been a deviation from the terms of the contract, by doing any extraordinary work * * * not contemplated by the contract, the undertaker will not be entitled to any compensation therefor, even if such extraordinary work * * * [has] greatly enhanced the value of the thing, and [is] for the benefit of the employer, unless [it has] been so done * * * with his consent, or by his approval or acquiescence * * *.' Story on Bailments, *Hire of Labor and Services,* 403-04, § 441c (9th ed)."

There was sufficient evidence on which the jury could (and did) find that defendant did not authorize the additional repairs. The trial court properly denied plaintiff's motion for a directed verdict on its first cause of action, and plaintiff's recovery was properly limited to the advertised charge for the authorized repairs.

The second issue raised by plaintiff is whether defendant pleaded and proved he had suffered "any ascertainable loss of money or property as a result of" plaintiff's conduct, as required by ORS 646.638(1). Defendant alleged in his counterclaim that "[a]s a result of Riviera Motors' conduct, [defendant] suffered an ascertainable loss of $1.50 when he stopped payment on his check." It was shown at trial that the alleged loss of $1.50 is the amount defendant was charged by his bank for stopping payment on the check, and plaintiff contends that the charge was not made "as a result of" any conduct on its part.

In *Scott v. Western Int. Sales, Inc.,* 267 Or 512, 515, 517 P2d 661 (1973), the court held that in an action under ORS 646.638 to recover the $200 penalty, " * * * there is no need to allege or prove the amount of the 'ascertainable loss' * * *," and that for the plaintiff in that action to recover the penalty, "[h]e merely had to prove he suffered some loss." 267 Or at 516. Here, the defendant alleged an "ascertainable loss," and without

objection introduced evidence that in addition to incurring the $1.50 bank charge, he incurred expenses in obtaining the interest-bearing loan to pay plaintiff's charges for the unauthorized repairs. Whatever may be the status of the stop payment charge under the statute, the loan expenses did constitute an "ascertainable loss" and were incurred by defendant "as a result of" plaintiff's unlawful trade practice. It would have been better practice if defendant had moved under former ORS 16.630 (now ORCP Rule 23B) to amend his pleadings to conform to the proof but plaintiff makes no claim to have been misled to its prejudice and the issue of "ascertainable loss" was properly submitted to the jury under the facts as proved. *Stool v. Southern Pac. Co.,* 88 Or 350, 374-75, 172 P 101 (1918).

The original judgment, including the award of attorneys fees and costs to defendant, is affirmed.