FORD, Executor, Appellant, vs. WERTH and another, Respondents.

*October 11—November 7, 1928.*

*V. J. O'Kelliher* of Oconto, for the appellant.

For the respondents there was a brief by *Classon, Clifford & Shannon,* attorneys, and *Allan V. Classon,* of counsel, all of Oconto, and oral argument by *L. P. Shannon.*

DOERFLER, J. On the night of the accident there was considerable traffic on Main street. A number of automobiles were parked on the north side of the street up to the curb, but sufficient space was left between these parked automobiles and the south curb to afford ample passageway for automobiles passing both toward the east and the west. It was Saturday night, and the street was crowded with people who had come to the city to shop or for amusement purposes.

At the time of the accident there was in force in the city an ordinance known as No. 398, which in part reads as follows:

· *"Crossing street diagonally.* At all corners or intersections where safety zones have been established no pedestrian

shall be allowed to cross any street intersection diagonally, and no pedestrian shall cross Main street between its intersection with Park avenue and its intersection with Michigan avenue other than at its intersection with streets, and all pedestrians must follow the safety zone."

The ordinance also provides a penalty for the violation of its provisions.

It is undisputed that the place where the deceased attempted to cross Main street was at a point prohibited by the ordinance. The street nearest Ford's drug store which intersects Main street is Ellis avenue.

The first question to be determined is whether the defendant Werth failed to exercise ordinary care at or immediately prior to the accident, and if so, whether such failure proximately contributed thereto. The defendant Werth was called as an adverse witness, and among other things testified in substance as follows:

"As I came east on Main street, about in front of Heller's meat market, I did not see Mr. Ford until he was pretty near in the middle of the road. It seemed like he was right in front of the car when I first saw him. I would say he was thirty feet away from the car, and was pretty near the center of the road. He was crossing from the north side of the road to the south side and was walking quite fast. I struck him just about at the west end of the Parker House, at the alley. The right headlight of the car struck him."

The street was well lighted by arc lights, and still Werth did not see the deceased until the latter arrived at about the middle of the street. This goes to the question of whether or not the defendant Werth, while operating his car immediately prior to the accident, exercised ordinary care with respect to lookout; at least it cannot be said that reasonable men might not differ upon this question. Under these circumstances the questions of negligence and proximate cause became jury issues.

It is undisputed that Main street was paved with concrete and that the surface thereof was dry. It was further testi-

fied by an expert that a car like defendant Werth's, under circumstances and conditions like those existing in the instant case at the time of the accident, while being operated at the rate of fifteen miles per hour, could be stopped within a distance of thirty feet. The defendant Werth testified that when he first saw the deceased he was about thirty feet distant from him, and that he immediately applied his brakes and continued so to do until he brought his car to a stop, after the accident. There was also testimony to the effect that the car skidded a distance of about fifty feet. The jury might find from these facts that Werth either operated his car at an unlawful rate of speed, or that he failed to have his car under proper control. The operation of a car at an unlawful rate of speed involves not only the question of the statutory speed limit in miles per hour in cities, but also an operation of the car in such a manner as to avoid accident by reason of the traffic upon the highway, the width of the street, etc. As to both of these questions pertaining to speed, a jury issue was presented. Likewise, a jury issue was presented on the subject of control of the car.

There remains to be considered the question of contributory negligence. The deceased having admittedly violated the provisions of the ordinance above set forth, defendants' counsel argue that he was guilty of contributory negligence as a matter of law. Furthermore, it is argued that, independently of the violation of the ordinance, the deceased was guilty of contributory negligence as a matter of law.

Counsel for the defendants have cited no case which supports their contention that the violation of an ordinance similar to the one in question constitutes contributory negligence as a matter of law. The violation of a city ordinance regulating automobile traffic and a violation of similar statutory provisions have been held negligence as a matter of law, but not necessarily contributory negligence. *Steinkrause v. Eckstein,* 170 Wis. 487, 175 N. W. 988; *Derr v. C., M. & St. P. R. Co.* 163 Wis. 234, 157 N. W. 753; *Maher v.*

*Lochen,* 166 Wis. 152, 164 N. W. 847; *Loehr v. Crocker,* 191 Wis. 422, 211 N. W. 299; *Yahnke v. Lange,* 168 Wis. 512, 170 N. W. 722. Numerous other cases and authorities are referred to in the *Crocker Case, supra.*

Whether or not the violation of an ordinance or a statute like those herein referred to constitutes a proximate cause, or whether there is a causal connection between such violation and the accident, ordinarily presents a jury question, although it is readily conceded that in some cases it is held that there is no causal connection as a matter of law, and in some cases it is held that the causal connection exists as a matter of law. In the instant case, we are of the opinion that the question of proximate cause constituted one for the jury to decide.

Independent of the ordinance, can it be said that the deceased was guilty of contributory negligence as a matter of law? The deceased was seen coming from his drug store by one Mrs. Morrison, who was walking west on the south side of Main street, toward Calligan's restaurant. When she saw him next he was about in the middle of the street, looking up and down the street, and then he jumped. She further testified that she turned her head, and then heard the crash but didn't see the collision. She also testified that she saw the lights of the car reflected on the pavement.

The defendant Werth testified that he was driving east on Main street on the night of the accident, and that he was about in front of Heller's meat market, and that he didn't see Mr. Ford until he was pretty near in the middle of the road and about thirty feet distant from the car. He was crossing from the north side of the road to the south side and was walking quite fast. That the deceased was going pretty near straight across the road, and he struck him about at the west end of the Parker House, at the alley, with the right headlight of the car. In his subsequent testimony the defendant Werth testified that he was not a good judge of

distances, but that he thought the deceased was fifteen feet distant from him when he first saw him, at or about the center of the road.

It thus appears that when the deceased made his observations, according to the testimony of Mrs. Morrison, he had negotiated at least one half of the street. Whether he made an observation before entering upon the street is not disclosed in the evidence. However, he arrived at the middle of the street, and there was ample room both to the north and the south for automobiles to pass him without interfering with his safety. When he arrived in the middle of the street he complied with the requirements laid down in the case of *Brickell v. Trecker,* 176 Wis. 557, 186 N. W. 593, by observing particularly the traffic coming from the west. He had just finished making this observation when he jumped, in order to avoid coming in collision with Werth's car. The fact that the deceased jumped at the time and place aforesaid indicates that the car was headed directly towards him. This is corroborated by the testimony of Werth, who testified that when he saw the deceased in about the middle of the street, he put on his brakes and steered his car in a northeasterly direction in order that he might avoid a collision. It only takes a car operated at the rate of fifteen miles an hour, two seconds to cover a distance of forty-four feet, and so it can readily be perceived that the various incidents that occurred according to the testimony of Mrs. Morrison followed each other in rapid succession; and it would require no strained logic for a jury to arrive at the conclusion that at the time the deceased made his jump he did so in order to avoid Werth's car, which was headed directly for him.

The testimony showing clearly an observation made by the deceased before entering into the zone of the east-bound traffic, and there being ample room to pass him on either side by both the east and west-bound traffic, it can hardly be

said that the deceased, in occupying the position that he did when he made his observation and when he jumped to avoid a collision, was guilty of contributory negligence as a matter of law. The question of deceased's contributory negligence was one for the jury.

*By the Court.*—The judgment of the lower court is reversed, and the cause is remanded with directions for a new trial.