Argued July 11; reversed September 11, 1934

# FIEGER *v.* IMPERIAL SKATING RINK
### (35 P. (2d) 683)

*Jerry E. Bronaugh* and *George E. Bronaugh,* both of Portland, for appellant.

*Robert F. Maguire,* of Portland (W. H. Morrison and Dalmas R. Richmond, both of Portland, on the brief), for respondent.

KELLY, J. The defendant, a corporation, was operating a roller skating rink. On the 12th day of June, 1932, plaintiff, a boy 16 years old, while skating as a patron in defendant's rink, sustained injuries by reason of the elbow of his left arm coming in contact with and being thrust through a window pane.

We quote from plaintiff's testimony:

"Q. Was this in the evening or the afternoon?
"A. It was about eight o'clock in the evening.
"Q. What did you pay to get in?
"A. Thirty-five cents.
"Q. At the time of the injury, what were you doing?
"A. I was skating.
"Q. Describe to the jury how you skated.
"A. The rink sets aside a certain time in the evening when they have skaters do different types of dancing, and at the particular time that I received this injury, I was doing a circle waltz with a girl partner. The rink wants to clear the floor to dance and then they called this circle waltz. The rink rings a bell to call our attention to it, and everyone must

circle. An attendant will ask them to leave the floor or get a partner. I was skating with this girl partner. We were dancing in an approved manner. When we got up to the north end of the rink, I was suddenly pushed or shoved, I don't recall, and I fell against the bench, and there was nothing to stop me, so I sat down heavily, and my arms were up from the skating, and coming back down one elbow went into the window. There was no protection on it, so my elbow went into the window. * * * Things seemed kind of hazy for a moment, there, and I didn't feel any pain at first, but I started to pull my elbow back, and sort of held there a fraction of a moment. I looked there, it seemed as though my arm had been cut off. I pulled my arm out, and started to skate to the end of the rink. I fell once, and got up and out to the entrance. Some boys put a tourniquet on my arm, took off my skates, put me in a car and took me to the emergency hospital."

It was stipulated that the window where this accident happened consisted of steel sashes four panes high, the panes being 14 inches by 18 inches, the lowest pane extending to within 38 inches of the floor, the panes being flush with the wall of the building; in front and below the window was a bench which extended 19 inches from the wall of the building; the back of the bench extending 32½ inches from the floor, the seat of the bench extending 16 inches from the floor.

Mr. C. M. Jeffres testified that since 1925 he had been manager for defendant and that during that time, except on the occasion in suit, no such accident as befell plaintiff had occurred in defendant's rink. Mr. Jeffres also testified as to the number of people who had skated there from 1927 to 1932, as follows:

"Q. * * * How many people have skated there from the time you started your records until the date of this accident?

"A. From 1927 up to 1932?

"Q. The date of this accident, I have reference to.

"A. Yes, it is 246 to 727—I can hardly see.

"Q. What do you mean, 246 thousand or hundred or what?

"A. Yes, thousand."

As part of his cross-examination, Mr. Jeffres testified as follows:

"Q. And you say it would be impossible for them to hit that window with their arm?

"A. Yes it is.

"Q. Why?

"A. Because it is away from the glass. The bench is in front, and is below, just like that (indicating). It is not wide enough. It is 14 inches off the glass, and then on this side is the bench where the boy broke the glass, and then the other side is the pipe through the pillar.

"Q. On which side?

"A. The west side.

"Q. You have an iron railing?

"A. Sure, we have since we started.

"Q. Which side of the rink did this happen?

"A. On the north side.

"Q. There is no railing on the north side?

"A. There is no railing on the north side, but there is a bench."

When both plaintiff and defendant had concluded the presentation of testimony and had rested, defendant interposed a motion for a directed verdict. After hearing argument thereupon, the court sustained said motion, and upon direction of the court, the jury returned a verdict for defendant. Plaintiff insists that this was error.

Defendant contends that the evidence fails to show any act or omission upon which even an inference of negligence can be raised; that it utterly fails to show any negligence whatever. The defendant also urges

that plaintiff utterly failed to show or prove that the respondent breached any duty owing by it to the plaintiff.

We quote from pages 17 and 18 of defendant's brief:

"The evidence not only fails to show any negligence upon the part of respondent but it affirmatively shows that the respondent did exercise ordinary and reasonable care for the safety and protection of the appellant and other patrons. The uncontradicted evidence of the respondent shows that approximately 1,000,000 skaters had skated at its rink during the last three or four years and that during this period, as well as during the entire life of respondent of approximately 8 to 10 years, no skater had ever been injured at this window or any other of the windows in the skating rink. That this is the best evidence that the respondent could produce in order to show that he had exercised due care cannot well be disputed."

It is also argued by defendant that plaintiff's injury was the result of an unforeseeable intervening act of a third party.

■ The proprietor of a place of public amusement is bound to guard against dangers that could reasonably be anticipated and averted by the exercise of ordinary care.

As above quoted, the testimony of Mr. Jeffres, if not directly at least inferentially, discloses that defendant anticipated the danger to its patrons of impact with the window in question, because it placed a bench in front and below it. Evidently defendant also anticipated such danger with reference to the window on the west side of the rink because there defendant guarded the window with an iron railing.

In the light of this testimony, by its own witness, defendant is in no position to contend that danger of impact by its patrons with the window in suit could not be anticipated.

■ The question presents itself as to whether defendant exercised ordinary care to avert any injury to its patrons which might be sustained in striking or falling against said window. If the undisputed facts disclose such a course on defendant's part that reasonable minds would not differ, but without dissent would agree, that defendant had exercised such ordinary care, then the judge of the court might properly so declare.

We have not been greatly aided by cases which involve similar acts. *Heath v. Metropolitan Exhibition Co.,* 58 Hun, 604 (11 N. Y. S. 357), is a case wherein the plaintiff, while a visitor on premises leased by defendant to an athletic club, was seriously injured by slipping upon a slat walk between the dressing room and bathroom, and accidently passing his hand and part of his arm through a glass door which was leaning against the partition at the side of the walk. Two reasons for affirming a judgment of dismissal were assigned by Mr. Justice Daniel, who wrote the prevailing opinion. One of those reasons was that it did not appear that the door had been placed where the accident occurred by the defendant, or that it was in that position when the lease was made. The other reason was that no proof was given showing that there was any reason whatever for expecting any injury to arise out of the act of placing or keeping the door in that position. Taking the prevailing opinion at full value, that case differs from the one at bar in that in the instant case defendant anticipated possible injury if the window were left unguarded and placed a bench in front of it as a safeguard against such possible danger.

Moreover, in a dissenting opinion in the New York case, Mr. Justice Brady, among other things, says:

"It was seemingly negligence to leave the glass frame or sash on the walk or way, and for the reason that a person using the latter might fall against it without negligence on his part in the slightest degree contributory. When a fall like that occurs, the person falling or tripping or slipping should be exposed to no other than the ordinary casualties of the situation, and which in all probability would not result in serious injury. If, in other words, the frame or sash had not been where it was, the plaintiff, though he might have fallen, would not have received such a wound as he suffered from, and it cannot well be denied that a kindred fall at the place where the frame was located, if the frame were then there, would, in all probability, result in some disaster. The glass present is in itself declaratory of such an incident being dangerous in the extreme, if so placed that it may be accidentally broken by contact with human flesh."

In the case of Rogers v. Meyerson Printing Co., 103 Mo. App. 683 (78 S. W. 79), it was held that a previous accident of a similar nature to that which befell plaintiff in that case constituted good cause to anticipate such a mishap; and that prior warning against the possibility of falling through the window showed that defendant anticipated such an accident.

These two cases are nearer in point than any of the other cases we have examined involving injury by forcible contact with framed glass. They are cited to support the principle that there may be circumstances and relationships requiring windows to be safeguarded.

As stated by Mr. Justice Goode, in the case last above cited:

"It will not do to say an event could not have been anticipated when the evidence shows it was anticipated.

As no precaution was taken to prevent such a fatality, except to warn the boys to refrain from sliding down the banisters, the decision of the case hinges on the adequacy of that precaution as constituting a full discharge of its duty by appellant, so that the court may exonerate it from liability for the fatality on proof that the warning was given.

"Was that enough to satisfy the law, or did the jury have a right to conclude the appellant was bound to guard the window in order to perform its duty to use ordinary care to prevent a casualty? To our minds it is scarcely debatable that it was a question for the jury whether some simple precaution that would render such an accident impossible, like barring the window, ought not to have been taken by the appellant company after its officers knew one person had fallen through an unbarred window and apprehended the like misfortune to some other employee. A casualty can not be classed as a pure accident for which no one is to blame, merely because it would happen infrequently, if the danger of its occurrence was present to the mind of the party who was charged with the duty of taking care to avert the casualty, or if, by reasonable prudence, he could have known there was danger of its occurrence." Page 691, ibid.

The instant case differs in three particulars from the case from which the foregoing excerpt is quoted. First, the case at bar is not one of a wholly unguarded window, but one in which the question is as to the sufficiency of the means employed for the purpose of guarding it. Second, no previous accident of a similar nature is disclosed in the case at bar, and third, the fact that the defendant anticipated such an accident is not shown by warnings given, but by an attempt to guard the window in suit and the window on the west side of the rink.

■ Here, we have one window guarded by a bench and another by an iron railing and we are confronted

with the question whether the bench constitutes such a safeguard as an ordinarily careful proprietor of a roller skating rink would employ. On the one hand we have the obvious fact that any one might lose his balance, while skating, and fall against the window panes when guarded only by a bench; and that plaintiff was so injured. On the other hand, as tending to show due care, we have the evidence introduced on behalf of defendant that during the years gone by a very large number of patrons had skated in defendant's rink without being injured by contact with the glass in the window in suit; and that defendant attempted to safeguard the window by placing a bench in front of and below it. Plaintiff is not conclusively bound by the evidence adduced from defendant's witness.

To determine the question thus involved, it becomes necessary to try a matter of fact upon which there is some evidence, both direct, presumptive and inferential, on each side.

■ The duty resting upon defendant was to exercise ordinary care to make the window safe for the patrons of the rink. The breach charged is a failure thus to safeguard the window. We think that, upon the record of this case, the question whether defendant failed to perform this duty should have been submitted to the jury.

The case of *Denver Park & Amusement Co. v. Pflug*, 2 F. (2d) 961, is cited by defendant. We quote an excerpt therefrom, italicizing one clause for the purpose of distinguishing it from the instant case:

"The principle is stated by Peckham, Judge, for the Court of Appeals of New York, in Hubbell v. Yonkers, 104 N. Y. 434, 10 N. E. 858, 53 Am. Rep. 522, thus:

" 'That which never happened before, *and which in its character is such as not to naturally occur to prudent men, to guard against its happening at all,* cannot, when in the course of years it does happen, furnish good ground for a charge of negligence in not foreseeing its possible happening and guarding against that remote contingency.' "

From the fact that a bench had been placed below and in front of the window where plaintiff was injured and an iron railing had been placed in front of another window in defendant's rink and from the further fact that defendant's manager, when asked why it would be impossible, as he had first testified, for a patron to hit the window in suit with his arm, thereupon assigned as one of his reasons the fact that the bench was in front of and below the window "where the boy broke the glass and then the other side is the pipe through the pillar"—from these facts, a jury, in the case at bar, would be justified in inferring that the possibility of injury to patrons by impact with these windows had occurred to defendant and that defendant had placed the bench and the iron railing respectively at the respective windows, as stated, to prevent such injury. In fact, to the writer such inference is inescapable.

This distinguishes the case at bar from the case of *Denver Park & Amusement Co. v. Pflug,* supra, and the other cases cited by defendant in support of its contention that no evidence of defendant's negligence is shown herein.

A similar principle distinguishes the case at bar from those cited by defendant to the effect that the insufficiently guarded window (if the same was insufficiently guarded) was only the remote cause of plaintiff's injury, the proximate cause being the shov-

ing and pushing which plaintiff underwent at the hands of an unknown party or parties. Typical of the cases cited by defendant to this point is *Missouri Pacific Ry. Co. v. Columbia,* 65 Kan. 390 (69 P. 338, 58 L. R. A. 399). In that case, the defendant, railway company, had piled upon the depot platform, about 15 to 22 feet from the track, 15 grain doors, in size, about 5½ by 6½ feet in dimensions, in weight, from 70 to 100 pounds. During all the years in which the road had been operated these grain doors had been so piled, and no accident had resulted therefrom. On the night in question, a severe gale blew one or more of these doors, from the place where located upon the track, resulting in such obstruction of the track as to derail the engine causing the death of deceased. There Mr. Justice Pollock quoted from *Sowles v. Moore,* 65 Vt. 322 (26 Atl. 629, 21 L. R. A. 723), as follows:

"It is not enough that the defendant has been negligent, unless that negligence has contributed to the injury of the plaintiff." Writing further this learned jurist says: "While one is responsible for such consequences of his fault as are natural and probable, and might therefore be forseen by ordinary forecast, if his fault happened to concur with something extraordinary and therefore not likely to be foreseen, he will not be answerable for the extraordinary result. * * * But can it be reasonably and successfully maintained that the employees of the company, in the exercise of that reasonable care and precaution required for the safety of those operating the engines of the company to keep the track free of obstructions, should have foreseen, anticipated, or even imagined that, from the operation of any ordinary natural cause, these doors, or one or more of them, might be lifted and carried from the place where located and lodged upon the track in such manner as to obstruct and render dangerous the operation of the road or to cause the derailment of an engine? We

think not. * * * The operation of the successive, wholly independent and unrelated cause and intervening agency, the severe gale, was the consequent, efficient and proximate cause of the grain doors being upon the track, which resulted in the derailment of the engine and damage to plaintiff.''

There, in the opinion of the court, the result of the severe gale could not be foreseen by ordinary forecast.

*Leavitt v. Stamp et al.*, 134 Or. 191 (293 P. 414), cited by defendant, applies the same rule. There, plaintiff was struck by an ironing board as it fell after a third party had knocked it off of the hook upon which plaintiff had placed it behind the kitchen door. Speaking through Mr. Justice BEAN, this court say:

''The testimony of plaintiff does not indicate that the injury complained of could have been foreseen or reasonably anticipated by defendants as the probable result of hanging the ironing board behind the kitchen door.''

In the case at bar both the fact that jostling and shoving of one couple of skaters by some other skater or skaters would occur and that the result thereof might be a violent impact against some window in the wall of the rink by the skater or skaters so shoved or pushed, are obvious and should have been, and from the record of this case we believe were, anticipated by defendant. We think that to decide whether defendant acted with ordinary care in attempting to safeguard its patrons as it did in that respect we would have to pass upon a disputed question of fact upon both sides of which there is direct and indirect evidence.

■■ Where two or more tort-feasors inflict injury or damage, both or either of them may be charged:

*Brown v. Jones et al.,* 130 Or. 424 (278 P. 981);
*Stamos v. Portland Electric Power Co.,* 128 Or. 310
(274 P. 915); *Peters v. Johnson et al.,* 124 Or. 237
(264 P. 459); *Strauhal v. Asiatic Steamship Co.,* 48
Or. 100 (85 P. 230). In the case at bar, plaintiff exercised his option by seeking to charge but one of the
alleged tort-feasors. That the party who pushed or
shoved plaintiff against the bench and upon the glass
in the window was not joined as a codefendant does
not relieve defendant from liability, if defendant were
negligent as alleged and its negligence, concurring with
that of the one who shoved plaintiff, were the proximate cause of injury to plaintiff.

For these reasons the judgment of the circuit
court is reversed and the cause remanded for such
further proceedings as are not inconsistent herewith.

RAND, C. J., and BELT and ROSSMAN, JJ., concur.