Argued February 18, reversed May 20, petition for rehearing
denied September 10, 1953

## CANADA *v.* ROYCE ET AL.

257 P. 2d 624

*Thomas L. Gatch and Lincoln Stuart Ferris,* of
Portland, argued the cause for appellants. With them
on the briefs were Boyd, Ferris & Erwin, of Portland.

*Herbert H. Anderson,* of Portland, argued the cause for respondent. With him on the brief were Koerner, Young, McCulloch & Dezendorf, of Portland.

Before LATOURETTE, Chief Justice, and WARNER, LUSK, BRAND and PERRY, Justices.

LUSK, J.

This is an appeal by the defendants from a judgment for plaintiff in an action for damages for personal injuries based on negligence.

The accident in which plaintiff was injured occurred at a crosswalk at the intersection of S. W. 20th Avenue and S. W. Morrison Street in the city of Portland (hereinafter referred to as 20th Avenue and Morrison Street). The former street runs north and south and the latter east and west. The plaintiff, with her sister, Mrs. Georgia E. Robinson, had attended the dog races at Multnomah Civic Stadium, which is bounded on the west by 20th Avenue and the north by Morrison Street. The two women left the stadium at about midnight, when the races were over, by an exit near the intersection in question. They were accompanied by a Mrs. Cora Stewart, whom they met in the stadium. They were crossing Morrison Street in a northerly direction on their way to the parking area, where plaintiff had parked her car earlier in the evening, when the plaintiff was struck, as she alleges, by a taxicab operated by the defendants. She alleged in the second amended complaint, on which the case was tried, that the defendants were negligent in the following particulars: that defendants failed to yield the right of way to plaintiff, failed to maintain a proper lookout, and failed to have said taxicab under

proper control. On the trial plaintiff was permitted to amend by alleging a fourth ground of negligence, namely, the failure to sound the horn of the taxicab.

At the close of the evidence the defendants moved for a directed verdict. The court's denial of the motion is assigned as error. We are of the opinion that the ruling was erroneous.

The evidence discloses the following facts:

At the time of the accident Morrison Street and 20th Avenue were filled with people who had just poured out of the stadium after the dog races. As plaintiff, Mrs. Robinson, and Mrs. Stewart left the sidewalk at the southeast corner of the intersection and started across Morrison Street, walking in the pedestrian lane, the defendants' taxicab was proceeding through the intersection in an easterly direction for the purpose of picking up passengers when he should reach the curb at the south side of Morrison Street east of 20th Avenue. According to the testimony of Fred M. Williams, the driver of the cab, he had been parked on Morrison Street just west of 20th Avenue for some time, waiting for the people to leave the stadium. According to witnesses for the plaintiff the cab came into the intersection from the north on 20th Avenue and then turned east into Morrison Street. For present purposes this dispute in the testimony is immaterial. The evidence shows that the driver made his way very slowly through the intersection because of the crowd. He would proceed a few feet, stop to let pedestrians go by, and then start up again. The plaintiff testified that she was watching the cab as it approached the crosswalk; that the cab stopped when she was about three feet in front of its right head light; that she looked to the right for traffic

coming from that direction; that she then looked to the left, and that, as she did so, "the cab gave a jerk and pulled right up"; that she jumped or stepped back and saw that the door of the cab was open; that her sister was on her left, slightly behind her, and that they did not have time to avoid a collision with the open door; that her sister was hit by the door, and that she was hit by her sister and thrown back against a lamp post at the curb on the south side of Morrison Street.

Mrs. Stewart was ahead of the other two women and crossed safely in front of the cab. She did not see the accident, though she heard the plaintiff scream.

Substantially, the plaintiff's testimony was corroborated by Mrs. Robinson and Mrs. Rosie Richardson, an acquaintance of the plaintiff whom she and Mrs. Robinson met at the dog races. Mrs. Richardson testified that she saw the accident as she stood on the sidewalk on the south side of Morrison Street near 20th Avenue. All these witnesses watched the cab, according to their testimony, as it approached the crosswalk, and none of them testified, and there is no evidence in the record, that the cab door was open until immediately before the accident.

The driver of the cab, Fred M. Williams, testified that as he was driving slowly through the crowd "I felt my door open," and that he looked back and saw a colored man walking back from the door, and saw Mrs. Robinson trying to get in the cab, and that "she bounded back or staggered back or something into another colored lady standing by the side of her." On cross-examination he testified that he felt the door open "and just as I glanced around I saw him promptly take his hand from the door, that is, back, saw him

turn around." There is no evidence that Williams knew that the door was open until just at the moment of the accident.

Three witnesses for the defendant corroborated Williams' version of the accident. These were Mr. and Mrs. George D. Christensen and their son, Victor Christensen. After the races they were waiting for a cab on the south side of Morrison Street near 20th Avenue. Victor Christensen testified that he watched the defendants' cab as it came across the intersection from the west side of 20th Avenue. Asked if he saw anyone near the cab he answered, "Yes, sir, I saw a tall, slim colored fellow. He ran out, and these other people appeared to be following him to catch the taxi, and I seen him open the door, and he kind of run along with the taxi as it moved and I—I would say that this lady was stepping into the taxi", and was knocked down. George D. Christensen testified:

"Well, what I noticed, when I first noticed it just about opposite the lamp post as he was headed in towards the curb, and when I was according to about the head end of this cab I noticed a colored gentleman going to open the door, a colored lady like she was going to get in the cab, like they were ready to catch the cab, and they were looking for passage in a taxicab, and as the motion of the cab was still in motion very slowly that, apparently this door, opened. This lady stepped in. She kind of went down to her knees."

Mrs. Christensen's testimony was substantially to the same effect. After the accident the Christensens became passengers in the defendants' cab and gave their names to the driver as witnesses.

The man who, according to the driver of the cab and the Christensens, had opened the cab door, gave

assistance to the plaintiff and her sister, and left the scene of the accident with them and accompanied them to the parking lot where plaintiff had left her car. The women, according to their testimony, did not know him, and his identity remains undisclosed.

■ The Christensens were disinterested witnesses, but their testimony was in conflict with that given by witnesses on behalf of the plaintiff and we must, therefore, treat the case as though the accident occurred in the manner sworn to by the latter. It is important to bear in mind, however, that the plaintiff does not charge in the second amended complaint that the door of the cab came open through any fault of the defendants. Under the record that was a fortuitous occurrence for which the defendants were not legally responsible.

It may be assumed for the purposes of the present discussion that there is evidence that the driver of the cab was negligent in failing to give a warning to the plaintiff by sounding the horn before starting (§ 115-335 (a), OCLA) and in failing to yield to her the right of way. Ch 407, Oregon Laws 1947, amending § 115-340, OCLA, as amended by § 8, Ch 428, Or Laws 1941. We are to determine whether the evidence justified the submission to the jury of the question of causation. This court has frequently announced adherence to the rule that an injury which could not have been foreseen nor reasonably anticipated as the probable result of an act of negligence is not actionable because the negligence in that case is not the proximate cause of the injury. *Leavitt v. Stamp,* 134 Or 191, 196, 197, 293 P 414; *Harris v. Hindman,* 130 Or 15, 20, 278 P 954; *Chambers v. Everding & Farrell,* 71 Or 521, 537, 136 P 885, 143 P 616. This rule prevails in most

jurisdictions (see 1 Shearman and Redfield on Negligence (Rev ed) 95, § 35), but has come in for criticism in recent years. In *Osborne v. Montgomery*, 203 Wis 223, 234 NW 372, Chief Justice Rosenberry ably expounded the view that forseeability is an element of negligence, not of causation. See, also, Shearman and Redfield, op. cit., p. 96. The Restatement of Torts uses the term "legal cause" instead of "proximate cause", and in § 431 says:

"The actor's negligent conduct is a legal cause of harm to another if

"(a) his conduct is a substantial factor in bringing about the harm, and

"(b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm."

Section 433 states four considerations that are important in determining whether the actor's conduct is a substantial factor in bringing about harm to another. They are as follows:

"(a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;

"(b) *whether after the event and looking back from the harm to the actor's negligent conduct it appears highly extraordinary that it should have brought about the harm;* [Italics added.]

"(c) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, *or has created a situation harmless unless acted upon by other forces for which the actor is not responsible;* [Italics added.]

"(d) lapse of time."

But in the 1948 Supplement of the Restatement, Subsection (b) is deleted from § 433 and transferred to § 435, under Title B, "Rules Which Determine the Responsibility of a Negligent Actor for Harm Which His Conduct is a Substantial Factor in Producing". In the 1948 Supplement § 435 reads as follows:

"(1) If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable.

"(2) The actor's conduct is not a legal cause of harm to another where after the vent and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm."

Comment c on Subsection (2) of § 435, together with Comment e under § 281, develops the legal theory that "where it appears to the court in retrospect that it is highly extraordinary that an intervening force came into operation" the problem is one of determining whether the duty imposed on the actor was designed to protect the one harmed from the risk of harm from the hazard in question, though it is conceded that courts frequently treat the question as a problem of causation.

■ In the case at bar, whether the question be phrased in terms of one legal theory or another, it must be concluded that the defendants are entitled to be absolved as a matter of law. Notwithstanding the failure of the driver of the cab to give the plaintiff a warning by sounding the horn or to yield the right of way, the situation as respects her safety, in ordinary circumstances, was precisely the same as though no negligent act had been committed. She saw the cab approaching

in time to step back out of its path. The driver "created a situation harmless unless acted upon by other forces for which the actor is not responsible". Restatement, Torts, §433 (b). The other force was the suddenly opened door. It came open, as we have said, through no fault and without the knowledge of the driver of the cab. This was an intervening force and a superseding cause of the plaintiffs injury. A superseding cause is defined in §440, Restatement, Torts, as follows:

"A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about."

Subsection 1 of §441 provides:

"An intervening force is one which actively operates in producing harm to another after the actor's negligent act or ommission has been committed."

In subsequent sections the rules are given for determining whether the active operation of an intervening force prevents the actor's antecedent negligence from being a legal cause in bringing about harm to another. Among these is Subsection (b) of §442, which reads:

"the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation".

Assuming that the defendants' negligence is to be regarded as a substantial factor in bringing about harm to the plaintiff, it appears to the court, looking back from the harm to the defendants' negligent conduct, highly extraordinary that such conduct should have produced that result.

.We are not to be understood as suggesting that the mere fact that neither plaintiff nor her sister was struck by the body (as distinguished from the open door) of the cab is conclusive of the question. A pedestrian might be compelled to step or jump back quickly to avoid being struck by an automobile which was unlawfully usurping the right of. way, and be injured by coming into collision with another automobile whose path the pedestrian had just crossed; or he might be forced to rush across the intersection and into the path of a car speeding from the opposite direction. Cases of this kind no doubt would present questions for a jury of proximate cause as we are accustomed to call it. See *Daniel v. Gielty Trucking Co.*, 116 NJL 172, 182 A 638. But, for the door of a slowly moving automobile to fly suddenly open when it is neither shown nor claimed that any human agency caused it to do so, or that the door was not securely fastened, or that there was any defect in its mechanism, or any fault whatever on the part of the operator of the vehicle, is certainly a highly unusual occurrence. But for that occurrence, of which the defendants' agent had no prior knowledge, there would have been no accident, for it was the open door which struck the plaintiff's sister and propelled her against the plaintiff. The injury, therefore, was one for which, under whatever theory of negligence and causation may be followed, the defendants are not legally responsible. As to this, we are satisfied there is no room for a reasonable difference of opinion.

The judgment is reversed and the cause remanded with directions to enter judgment for the defendants.