Argued March 5, reversed April 29, petition for rehearing
denied October 21, 1959

HENTHORNE, ADMINISTRATOR *v.* HOPWOOD ET AL

338 P. 2d 373
345 P. 2d 249

*Dale Jacobs,* Oregon City, argued the cause and filed a brief for appellants.

*Frank P. Santos* argued the cause for respondent. On the brief were Jack, Goodwin & Santos and Richard E. Rink, Oregon City.

Before McAllister, Chief Justice, and Lusk, Perry, O'Connell and Crawford, Justices.

LUSK, J.

This is an action for death by wrongful act, in which the plaintiff recovered a judgment and defendants have appealed. The deceased, Flossie M. Henthorne, while crossing 16th Street in Oregon City, was struck by an automobile driven by the defendant William B. Hopwood and owned by the defendant Burt Hopwood, and died as the result of the accident. The uncontradicted evidence shows that the deceased was crossing the street between intersections, and was struck when she was near the center of 16th Street and at least 40 feet from the nearest crosswalk at the intersection of Harrison and 16th Streets. The automobile had passed through the intersection immediately prior to hitting Mrs. Henthorne. The accident occurred about dusk; it was raining and the lights on the defendants' car were burning. The jury could have found that the defendant, William B. Hopwood, was driving at an unreasonable rate of speed and that he was not keeping a proper lookout.

An ordinance of the city in effect at the time provided:

"Jay Walking: It shall be unlawful for any pedestrian to cross any of the streets in Oregon City, at any other place than the regular inter-

section crossing in line with the property line of said street, upon an area which would be covered by the sidewalk if extended."

The deceased, in crossing the street at the place where she did, violated this ordinance and was guilty of negligence as a matter of law. The court so instructed the jury, but denied a motion of the defendants for a directed verdict and submitted to the jury the question whether the negligence of the deceased was the proximate cause of the accident. In this, we think the court erred.

▋▋ The case is ruled by *Leap v. Royce,* 203 Or 566, 279 P2d 887, in which we held that a pedestrian was barred by his violation of a similar ordinance of the city of Portland from recovery for the negligence of a motorist. To the same effect is *Rosevear v. Rees,* 77 Idaho 270, 291 P2d 856, 859. See, also, *Lapuyade v. Pacific Employers Insurance Co.,* 202 F2d 494, 497. The ordinance was designed to prevent the very type of accident that occurred. As stated in Prosser on Torts (2d ed), p 286, "The accepted view now is that the plaintiff's failure to exercise reasonable care for his own safety does not bar his recovery unless his injury results from the particular risk to which his conduct has exposed him." It is clear in this case that the conduct of the deceased did expose her to the particular risk from which her injury resulted and that it was a substantial factor in such injury. See Leon Green, Contributory Negligence and Proximate Cause, 6 NCarLRev 3, and Prosser, op cit. Speaking of cases involving this question, Dean Prosser says:

"Such cases frequently say that the plaintiff's negligence is not the 'proximate cause' of his own damage. It is, of course, quite possible that his conduct may not have been a substantial con-

tributing factor at all, where the harm would have occurred even if he had exercised proper care. But in the usual case the causal connection is clear and beyond dispute, and no problem of causation is involved. What is meant is that the plaintiff's conduct has not exposed him to any foreseeable risk of the particular injury through the defendant's negligence, and therefore is not available as a defense."

The plaintiff argues that the accident would have occurred even though the deceased had been in the pedestrian crosswalk at the time that she was hit. This is pure conjecture and without any foundation in the evidence.

Reversed.

McALLISTER, C. J., dissents.

O'CONNELL, J., specially concurring.

Today we hold that because the plaintiff crossed the street in violation of a traffic ordinance prohibiting jaywalking he is contributorily negligent as a matter of law and therefore he is not entitled to have the jury consider his claim.

A few days ago in *Barnes v. Winkler*, 216 Or 130, 337 P2d 816, we held that a plaintiff who crossed a street in a similar manner was entitled to the jury's deliberation on his claim where no ordinance prohibited jaywalking.

The difference in the result in the two cases rests entirely upon the happenstance that although in both cases the plaintiff was crossing in the middle of the block, in the one case an ordinance prohibiting the crossing of a street outside of the crosswalk was violated and in the other case it was not. The only explanation we can give to the plaintiff in the

present case for the summary treatment of his claim is that the violation of an ordinance is negligence per se in this state and that contributory negligence bars a plaintiff's recovery. Were he to ask us to justify either of these rules we would be hard pressed to give a convincing explanation. The doctrine of contributory negligence is subject to severe criticism. Prosser, Comparative Negligence, 51 Mich L Rev 465 (1953); James, Contributory Negligence, 62 Yale L J 691 (1953); but cf., Powell, Contributory Negligence, A Necessary Check on the American Jury, 43 A B A J 1005 (1957).

The idea that a negligent plaintiff should bear the entire loss caused principally by the defendant's negligence is not appealing to one's sense of justice. *Christensen v. Hennepin Transportation Co.,* 215 Minn 394, 10 NW2d 406, 147 ALR 945 (1943). But the doctrine is too firmly established for us to eliminate it by judicial decision. Justice Holt's comment in *Haeg v. Sprague, Warner & Co.,* 202 Minn 425, 281 NW 261 (1938) expresses the same view:

> "No one can appreciate more than we the hardship of depriving plaintiff of his verdict and of all right to collect damages from defendant; but the rule of contributory negligence, through no fault of ours, remains in our law and gives us no alternative other than to hold that defendant is entitled to judgment notwithstanding the verdict. It would be hard to imagine a case more illustrative of the truth that in operation the rule of comparative negligence would serve justice more faithfully than that of contributory negligence. * * * But as long as the legislature refuses to substitute the rule of comparative for that of contributory negligence, we have no option but to enforce the law in a proper case." 202 Minn 425, 429-30, 281 NW 261, 263.

Also susceptible to criticism is the doctrine that the violation of a statute or ordinance is negligence per se. It seems little more than a fiction to assume that in the enactment of traffic laws the legislature or a city council intended to prescribe the scope of relief available to persons seeking compensation for injuries in automobile accident cases. 2 Harper & James, Torts § 17.6. But here also we cannot, consistently with the principle of stare decisis, overthrow former decisions firmly establishing the negligence per se rule in this state.

Where the plaintiff is met only with the defense of contributory negligence as in *Barnes v. Winkler,* supra, ordinarily his case will go to the jury and the unfairness which the rigid application of the doctrine of contributory negligence may produce can be ameliorated by thus permitting a jury to weigh the respective fault of the plaintiff and the defendant. But when the defense of contributory negligence is coupled with the negligence per se rule the plaintiff may be, as he is by our decision in the instant case, deprived of the jury's consideration of his claim and the chance of recovery in spite of his contributing negligence. The plaintiff's opportunity to reach the jury should not rest upon the circumstance that the particular street which he was crossing and upon which he was injured was, or was not, affected by a traffic law. The violation of traffic laws should be regarded only as evidence of negligence to be weighed by the jury. At most, such violations should be considered as prima facie evidence of negligence. This is the solution adopted in Minnesota. Minn Stat Ann, § 169.96.

Similar legislation should be enacted in Oregon.

## ON REHEARING

Jack, Goodwin & Santos, Oregon City, and Philip A. Levin, Portland, for the petition.

Hibbard, Jacobs & Caldwell and Harold Uney, Oregon City, contra.

Before McALLISTER, Chief Justice, and LUSK, PERRY, O'CONNELL and CRAWFORD, Justices.

LUSK, J.

The case is before the court on a petition for rehearing, and we deem it advisable to give a more detailed statement of the evidence than in our former opinion.

The accident occurred in Oregon City on October 10, 1955, at about 5:45 p.m. It was "fairly dark", dark enough for automobiles to be driven with their lights on, and it was raining. Defendant, William Hopwood, was returning home from work driving a 1945 Chevrolet automobile which was owned by his father, Burt Hopwood. The latter is also made a party defendant, but for convenience we will refer to William Hopwood as though he were the sole defendant. His route took him East on 16th Street, which he had entered from Jackson Street. Two blocks East of Jackson Street, 16th Street is intersected by Harrison Street. Somewhere between this intersection and the next one to the East, the plaintiff met her death while she was crossing 16th Street from North to South and was struck by the Chevrolet.

Sixteenth Street is 40 feet wide from curb to curb, as is Harrison Street North of the intersection. South of the intersection, it is only 20 feet wide. Sixteenth Street going East is uphill, but levels off at the intersections. The crosswalk on the East side of the intersection was not marked.

The deceased, who was 65 years of age at the time of the accident, had been to a grocery store located on the North side of 16th Street, a block East of Harrison Street, and was returning home with her purchases. Beverly Partlow, a 12-year-old girl, saw the accident from the window of the living room of her home at the Northeast corner of 16th and Harrison Streets. She was called as a defendant's witness and testified:

> "A Well, I seen Mrs. Henthorne go up to the store, and then, when she was coming down, she crossed—

> "Q Be sure and keep your voice up, now.

> "A — she crossed in our driveway; and she got about to the middle of the road, and she turned around and waved at me. And then I turned around and started to say to Bobo that, 'There goes Mrs. Henthorne,' and all of a sudden I heard—I turned around, and she was still waving, and Hopwood, Bill Hopwood was coming up the hill, and I seen her fly over the back of the car."

The witness explained later that by the words "back of the car" she meant the "top of it." She testified that Mrs. Henthorne was carrying groceries cradled under her left arm and a raised umbrella "kind of tipped" in her left hand. The driveway where the deceased started to cross the street was 46 feet 8 inches East of the East curb line of Harrison Street. The witness testified on cross-examination that the deceased "walked at a kind of angle" as she crossed the street. After the accident, the defendant's car, according to this witness, came to a stop with its right front wheel just slightly off the street in the driveway of her house, headed approximately in a Northerly direction.

The defendant gave testimony to the following effect: After turning from Jackson Street into 16th Street he drove in second gear for about half a block at a speed of about five or ten miles an hour, then shifted into high and was following at a distance of three or four car lengths a Mercury car driven by Jim Greenslitt, an acquaintance. Before reaching the intersection, Greenslitt pulled to the right as far as he could preparatory to turning South into Harrison Street, and the defendant drove slightly to the left of the center of 16th Street as he passed Greenslitt. He estimated his speed at that time at ten to fifteen miles per hour, and as he entered the intersection at between fifteen and twenty miles per hour, but he admitted that he had told an officer after the accident that his speed was 25 or 30 miles per hour. He thought he was traveling between 20 and 25 miles per hour when his car collided with the plaintiff. He saw the deceased when he was a foot or two away from her, applied his brakes and turned his wheel to the left and slid. The car was a foot or two to the right of the center of the street just before the collision. A milk carton carried by the deceased hit the windshield and covered it with milk, obscuring his view. The rear end of the car moved counter-clockwise and the car came to rest headed in a Northeasterly direction, and a few feet East of the Partlow driveway. His left front wheel was a little North of the center of the street; his right front wheel was about on the center. At the suggestion of James Greenslitt, who had hurried to the scene, he moved his car to get it out of the path of traffic. He cramped the wheels as hard as he could and coasted it downhill to the curb. When his car came to a stop the body of the deceased was lying near the back wheel. He laid his coat over the body.

James Greenslitt saw the accident from his car, after he had pulled over to the right and was about to turn into Harrison Street. He testified that the defendant "went by me and was about 25 or 30 feet up the—past the intersection when I seen the lady fly.[1] He hit her with the front fender and she slid over the hood and down on the opposite side of the car." The car traveled not more than five or six feet "after she came over and fell into the street." He explained later that the defendant's car was a little more than 25 or 30 feet from the edge of the curb when "I saw her coming over," that it was about 30 feet from the intersection when she was hit. The witness further testified that the deceased "had on dark clothes  *  *  *  from her waist up, and they put a blanket and coats over her."

Ver Leroy Flynn, a police officer of Oregon City, who arrived at the scene of the accident a few minutes after it occurred, testified as a witness for the plaintiff that the front end of the car, which by that time had been moved and was headed in a Westerly direction, was 45 feet 5 inches from a Portland General Electric power pole at the Northeast corner of the intersection of 16th and Harrison Streets, and that the deceased was lying nine feet behind the left rear wheel of the Chevrolet. The power pole was two feet East of the East curb line of Harrison Street. This would place the deceased at least 70 feet East of the curb line. The foregoing testimony was based on measurements made by the witness. He further testified that the head of the deceased was a little North

---

[1] In preparing our former opinion, this testimony was overlooked, and we erroneously stated that the uncontradicted evidence showed that the plaintiff "was struck when she was  *  *  *  at least 40 feet from the nearest crosswalk at the intersection of Harrison and 16th Streets." 68 Adv Sh 17, p 717, 338 P2d 373.

of the center line, and that the body was lying with its head to the Southwest and the feet to the Northeast.

The evidence establishes beyond question that Mrs. Henthorne was crossing 16th Street between intersections, in violation of the city's "jaywalking" ordinance. How far she was from the nearest crosswalk when she was struck by the Chevrolet is not clear. As the crosswalk is ten feet wide, the distance could have been found to be as little as 15 feet, on the basis of Greenslitt's testimony that the accident occurred 25 to 30 feet East of the East curb of the intersection. We therefore assume that this was the fact, in considering counsel's contention that the question of proximate cause was properly submitted to the jury and that this court erred in holding that the deceased was guilty of contributory negligence as a matter of law and that the circuit court, therefore, should have granted defendant's motion for a directed verdict.

Counsel for the plaintiff again argue that the jury could have found that the accident would have occurred even though the deceased had been in the crosswalk when she was struck. If that is a fair inference, deducible from the evidence, then we would agree that the question of proximate cause was for the jury. *Loibl v. Niemi,* 214 Or 172, 177-178, 327 P2d 786; *Leap v. Royce,* 203 Or 566, 573, 279 P2d 887; *Staples v. Senders,* 164 Or 244, 255, 96 P2d 215, 101 P2d 232; *Ekloff v. Waterston,* 132 Or 479, 487, 285 P 201, 68 ALR 1002. We think, however, as we said in our former opinion, that the argument is based upon conjecture, because it involves an attempt to determine, not what the defendant's behavior was, but what it would have been in other circumstances. It necessitates an inquiry into

the question whether the defendant would have seen the deceased in time to avoid the collision and would have avoided it if the latter had been in the crosswalk and under the protection of the statute which would have given her the right of way. There is no evidence upon that question. The crosswalk constituted a warning to the defendant of the likelihood of the presence of pedestrians upon it. There is no evidence that the defendant did not give heed to that warning or that he was not keeping a proper lookout for pedestrians in the crosswalk, had there been any there.

■ The cases cited by counsel for the plaintiff in support of this contention are not, we believe, to the point. They involve violations of statutes which require vehicles to have a piece of equipment designed to give a warning to other users of the highway of the presence of such vehicles, as, for example, headlights on an automobile that are required to be lighted by a certain time after sunset. Compliance with the statute presumably will enable others to see the vehicle and avoid a collision with it. But if the circumstances are such that the other person saw, or in the exercise of reasonable care should have seen, the vehicle notwithstanding the absence of the required piece of equipment, then it may well be concluded that the accident would have occurred even though there had been no violation of the statute, and, therefore, it can not be said that such violation was a factor contributing to the accident. *Ellenberger v. Fremont Land Co.,* 165 Or 375, 107 P2d 837; *Landis v. Wick,* 154 Or 199, 57 P2d 759, 59 P2d 403; *Kuehl v. Hamilton,* 136 Or 240, 297 P 1043; *Martin v. Oregon Stages,* 129 Or 435, 277 P 291.

*Landis v. Wick,* upon which the plaintiff seems

especially to rely, is typical of the other cases cited. The plaintiff was a bicyclist who, while riding along the highway, after sunset, was struck from the rear by an automobile operated by the defendant. A statute required plaintiff's bicycle to have a lamp on the front and a reflector on the rear, but it had neither. Defendant contended that for this reason plaintiff was guilty of contributory negligence as a matter of law. The court held that, because there was evidence from which the jury could find that it was sufficiently light at the time of the accident to enable the defendant in the exercise of due care to see the plaintiff's bicycle notwithstanding the absence of a reflector in the rear, the question of proximate cause was for the jury. The court said:

"The principles of law applicable to defendant's first assignment of error seem to be simple and well established. Both sides agree that the Last Clear Chance Doctrine, as employed in this state (Dorfman v. Portland Electric Power Co., 132 Or. 648 (286 P. 991)) is not applicable to this action. If plaintiff's negligence was merely a contemporaneous condition, it will not defeat a recovery. For plaintiff's negligence to have such an effect, it is not essential that it should have been the cause of the injury. If it contributed thereto, that will suffice. It is enough if his injury might have been avoided had he equipped his bicycle with a reflector. If the injury was the natural and probable consequence of the neglect, the needed relationship is established. Both negligence by the plaintiff and its necessary relationship to the injury must be shown. If the accident would have happened whether the reflector was in place or not, its absence was not a concurring cause of the plaintiff's injury. The statute, obviously, does not contemplate that reflectors shall be the sole warning to motorists of the presence of bicycles upon the highway. Nor does

the statute intend that motorists shall look solely for reflectors, oblivious, in the meantime, of all other indications of the presence of bicyclists. The reflectors are intended to supplement whatever other warnings there may be. For instance, the bicycle itself may be visible whether protected by a reflector or not. Its movement or accompanying noises may be sufficient to apprise on-coming motorists of its presence. Or it may be that street lights or automobile headlights point out its presence upon the highway. If the presence of a bicycle is indicated in the above or in any other manner in time to give an observant motorist a reasonable opportunity to avoid striking it, but if his attention is diverted and he runs down the bicyclist, then it cannot be said that the resulting injury was due to the absence of a reflector. * * *" (154 Or at 204-205)

A court could not justly say of the plaintiff in *Landis v. Wick,* "If he had equipped his bicycle with a relector, the defendant's automobile would not have struck him." On the contrary, since the light from the sky dispensed with the need of a reflector, a jury might well say that the plaintiff would have been struck just the same even though he had complied with the statute. We have already pointed out why no similar conclusion can rationally be drawn from the facts of the present case.

■■ Indubitably, violation of the ordinance was a cause in fact of the plaintiff's injury. See Prosser on Torts (2d ed), 218 et seq. And if a cause in fact, what principle of law or process of reasoning is there to tell us that it was not a "legal cause," to use the terminology of the Restatement of Torts, §§ 281, 431 (see *Canada v. Royce,* 199 Or 196, 202, 257 P2d 624), or a "proximate cause," as we customarily say? We speak of "a" proximate cause, for there may be two

or more proximate causes of an injury. 65 CJS 674, Negligence § 110; Leon Green, Contributory Negligence and Proximate Cause, 6 N Car L Rev 3, 12. True, the court said in *Stool v. Southern Pac. Co.,* 88 Or 350, 373, 172 P 101:

> "Strictly speaking, there can not be two 'proximate' causes for any injury. Where two or more circumstances, each involving negligence, combine to produce an injury which, but for all of them, would not have occurred, these circumstances taken together are the cause of the injury and therefore constitute but one proximate cause."

But *Stamos v. Portland Elec. Power Co. et al,* 128 Or 310, 315, 274 P 915, recognizes that there may be more than one proximate cause of an injury. And in reality it makes little difference whether we speak of two or more proximate causes or of the "combined and concurrent negligence [of two persons which] produced a single and indivisible injury." *Peters v. Johnson,* 124 Or 237, 246, 264 P 459. See, also, *Flieger v. Imperial Skating Rink,* 148 Or 137, 149, 35 P2d 683. The point is that, in a case like this, the fact that the negligence of the defendant may be regarded as a proximate cause of the accident and injury does not prevent the negligence of the plaintiff from operating also as a circumstance to produce the injury, and, therefore, from constituting contributory negligence and a bar to the action.

■ We said in our former opinion that this case is controlled by *Leap v. Royce,* supra. One of the decisions there relied on is *Meincke v. Oakland Garage, Inc.,* 11 Cal2d 255, 79 P2d 91, which involved an injury sustained by a pedestrian who was struck by an automobile while violating an ordinance prohibiting jaywalking. The Supreme Court of California, in affirm-

ing the judgment of the District Court of Appeal reversing a judgment for the plaintiff, adopted the opinion of the latter court, which included the following paragraph:

"The true rule would seem to be, as deduced from the above cited cases, that if plaintiff is himself guilty of continuing negligence without which the injury would not have occurred, and if as a person of ordinary prudence he should have foreseen that an injury of that character would be likely to result from his negligence, his continuing negligence is a proximate cause of his injury and will bar a recovery, unless the doctrine of last clear chance supervenes to make his negligence a remote rather than a proximate cause. (See on the question of foreseeableness as an element in proximate cause where the negligence of another concurs to produce the injury, Rauch v. Southern California Gas Co., 96 Cal.App. 250, 255 et seq. [273 P. 1111]; Sawyer v. Southern California Gas Co., 206 Cal. 366, 374, 375 [274 P. 544].) Where the negligence of the plaintiff consists in the violation of a statute or ordinance designed to prevent casualties of the very sort which follows, he must be held as a person of ordinary prudence to have foreseen that the violation of the law enacted to avoid the happening of such a casualty might reasonably result in the casualty's occurrence. To hold otherwise would be to largely nullify laws which are adopted for the safeguarding of the public from types of injury which are of such frequent recurrence as to lead legislative bodies to adopt regulatory measures to prevent them." (11 Cal2d at 258.)

We realize that this view has not been accepted by a majority of the courts that have passed upon the question in similar cases. See *Walker v. Robertson,* 141 WVa 563, 91 SE2d 468; *Meyn v. Auto Co.,* 118 WVa 545, 191 SE 558; *Murphy v. Homans,* 286

Ky 191, 150 SW2d 14; *Smith v. Zone Cabs,* 135 OhioSt 415, 21 NE2d 336 (a four to three decision); *Mansperger v. Ehrnfield,* 59 OhioApp 74, 17 NE2d 271; *Seinsheimer v. Burkhart,* 132 Tex 336, 122 SW2d 1063; *Knutson v. McMahan,* 186 Wash 518, 58 P2d 1033; *Crowl v. West Coast Steel Co.,* 109 Wash 426, 186 P 866; *Phillips-Buttorff Mfg. Co. v. McAlexander,* 15 TennApp 618; *Ford v. Werth,* 197 Wis 211, 221 NW 729. But the reasoning of the California court has been heretofore approved by this court, and we have yet to find a satisfactory answer to it.

Typical reasoning on the other side of the question is that of the majority in *Smith v. Zone Cabs,* supra, where it is said that because it could have been found from the evidence that the driver of the defendant's cab in the exercise of ordinary care could have seen the plaintiff in ample time to slacken his speed or deviate sufficiently from his course to avoid the accident, while, on the other hand, the plaintiff under the evidence may not have kept a proper lookout, reasonable men might differ as to the proximate cause of the accident. The dissenting minority thought that the opinion of the majority manifested "an inclination improperly to impose the rule of comparative negligence * * *." (135 OhioSt at 424.) To us it seems, also, that this decision is based upon an application of the last clear chance rule, which would be inadmissible in Oregon. In this state, a plaintiff who negligently gets himself into a position of peril can not escape the consequences of his negligence by proving that the defendant, in the exercise of reasonable care, should have seen him and avoided the accident. On the contrary, the plaintiff must both plead and prove that the defendant had actual knowledge of the peril of the injured party in time to have

prevented the accident by diligent use of the means at hand irrespective of the negligence of the plaintiff prior to this discovery. And the doctrine will not apply if the negligence of the plaintiff continues operative at the time of collision. *Emmons v. Southern Pacific Co.*, 97 Or 263, 292, 191 P 333; *Stewart v. Portland Ry., L. & P. Co.*, 58 Or 377, 381, 114 P 936. In *Dorfman v. Portland Electric Power Co.*, 132 Or 648, 286 P 991, we held that where the driver of a horse-drawn junk wagon negligently cut the corner in order to cross a street railway track and was struck by a street car and it was not shown that the motorman saw him in time to avoid the collision, the plaintiff was guilty of contributory negligence and would not be permitted to recover. It was said in that case that even though it should be assumed that there was evidence that the motorman had actual knowledge of the plaintiff's peril, yet it was "clear there was no cessation of plaintiff's negligence at the time he was struck by the street-car * * *. His negligence never ceased but continued up to the very time of collision." (132 Or at 651.) For that reason, it was held on the authority of *Emmons v. Southern Pacific Co.*, supra, that the last clear chance doctrine was not involved.

Plaintiff here does not rely on the last clear chance doctrine. Instead, her counsel insist that the defendant's negligence consisted, in part, in his failure to observe the decedent in time to avoid striking her. There is evidence that the defendant was negligent in this respect, and evidence that he was driving at an unreasonable rate of speed in the circumstances. But there is uncontradicted evidence that the decedent's violation of the jaywalking ordinance continued up to the time of the accident and this, we think, demonstrates that her negligence contributed to her injury

and death and is a bar to recovery in this action. A different decision could not be rendered without overruling, not only *Leap v. Royce,* but also *Emmons v. Southern Pacific Co.* and *Dorfman v. Portland Electric Power Co.* We do not think that they should be overruled.

Counsel for the plaintiff have suggested several hypothetical sets of facts under which, it is argued, it would be obviously wrong to hold as matter of law that violation of a jaywalking ordinance would be contributory negligence. The inference sought to be drawn is that our decision in the present case would compel a like decision in the imagined cases should they ever arise. We do not doubt that the circumstances may be such as to permit a jury to find that the violator of a jaywalking ordinance would have been injured just the same even though he had obeyed the ordinance and, therefore, that its violation was not a proximate cause of the injury. We think that we are not called upon to discuss factual situations not presented by the record before us, and that it is sufficient to say that for the reasons heretofore given this is not a case of the kind suggested.

The petition for rehearing is denied.

McALLISTER, C. J., dissents.